United States District Court
Southern District of Texas
FILED

MAR 0 8 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEYANIRA CRESPO,                              *
                                             *
VS.                                          *        CIVIL ACTION NO. **B-02-046**
                                             *
FIRST CASH FINANCIAL SERVICES                *
INC, f/k/a FIRST CASH INC., A                *
Delaware Corporation; and FULANO             *
DOE, A Resident of the State of Texas        *

## NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW FIRST CASH FINANCIAL SERVICES INC., f/k/a FIRST CASH INC., A Delaware Corporation, (hereinafter referred to as "First Cash"), Defendant in the above entitled and numbered cause, and files this its Notice of Removal of the present cause from the County Court at Law No. One of Cameron County, Texas, in which it is now pending, to the United States District Court for the Southern District of Texas, Brownsville Division, showing the Court as follows:

1.    This cause was commenced in the County Court at Law No. One of Cameron County, Texas, on July 5, 2001, when Plaintiff's Petition was filed in Cause Number 2001-CCL-00524-A. A copy of Plaintiff's Petition is attached hereto and incorporated herein for all purposes to this Notice of Removal.

2.    Defendant First Cash Financial Services, Inc. was served with a copy of the Plaintiff's Petition through its registered agent, CT Corporation System, on July 6, 2001. A copy of the Citation served on Defendant indicating date of service is attached hereto and incorporated herein for all purposes.

3.    This is a civil action for injuries and damages allegedly incurred by Plaintiff, who alleges sexual harassment, retaliation, and wrongful termination against Defendant

First Cash. In her Petition, Plaintiff alleges causes of action for statutory violations of the Texas Labor Code, common law causes of action including assault, false imprisonment, invasion of privacy, intentional infliction of emotional distress, negligence, negligent hiring, defamation, defamation per se, and self-compelled defamation, and also requests declaratory relief.

4.     On January 7, 2002 Defendant served its First Request for Disclosure on Plaintiff, which requested that Plaintiff identify the legal theories and factual bases of her claims. Defendant received Plaintiff's responses to this discovery request on February 21, 2002. In response to Item No. 4, on page 7 of her response, Plaintiff stated that she has additional causes of action not stated in her original Petition, which include "breach of the employment contract based on 1) defendant's failure to give plaintiff, and others similarly situated, notice of rights to continuation coverage upon becoming eligible for enrollment in the group health Plan, during the four year period preceding the filing of this case; and 2) defendant's failure to give plaintiff, and others similarly situated, the notice of creditable coverage upon termination of employment, during the four year period preceding filing of this case."   While Plaintiff attempts to avoid federal jurisdiction by disclaiming that she will allege violations of the Employee Retirement Income Security Act or the Health Insurance Protection and Accountability Act, by addition of these new claims and causes of action, she is in fact seeking relief under ERISA and HIPAA. Plaintiff can call the causes of action whatever she would like; the fact remains that the relief she seeks arises under federal statutes.   This is further evidenced by page 8 of Plaintiff's response to the request for disclosure where Plaintiff states that she is seeking civil penalties for violation of COBRA in the amount of $200,750.00 and for violation of HIPAA in the amount of $78,430.00.   A copy of

Plaintiff's Response to Defendant's Request for Disclosure to Plaintiff is attached hereto as Exhibit "A" and incorporated herein for all purposes.

5.      Plaintiff also claims that Defendant failed to pay her and others similarly situated overtime. Although Plaintiff again attempts to avoid removal by characterizing this claim as a breach of contract, Plaintiff's allegations actually state a claim under the Fair Labor Standards Act.

6.      The above-described action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. §1331 inasmuch as this action arises under the Constitution and the laws of the United States. Removal is proper pursuant to the provisions of 28 U.S.C. §1441(b), as this is a civil action where this Court has original jurisdiction and is founded on claims arising under the Constitution and the laws of the United States.

7.      Movant would further show the Court that Plaintiff has named "Fulano Doe" as an additional in Plaintiff's Petition. Pursuant to 28 U.S.C. §1441(a), the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. Therefore, the alleged defendant "Fulano Doe" should not be considered as a defendant, and, therefore, no consent from this defendant is required.

8.      Defendant would further show the Court that Plaintiff's Petition seeks unspecified damages. Defendant's First Request for Disclosure to Plaintiff also requested that Plaintiff itemize "the amount and method of calculating economic damages." In her response on page 7 inquiring about economic damages, Plaintiff stated that she is seeking $25,594.44 in back pay, five years' front pay in the amount of $65,000.00, and civil penalties of approximately $279,180.00. Based on Plaintiff's response to Defendant's request for disclosure, Plaintiff is seeking to recover from Defendant damages well in excess of $75,000.00.

9.    Upon filing of this Notice of Removal of this cause, written notice of the filing by petitioner to Plaintiff and her counsel has been provided as required by law. A copy of this notice is also being filed with the Clerk of the State Court in which this cause was originally filed.

10.    This Notice of Removal is timely filed in accordance with 28 U.S.C. §1446(b), in that it is filed within thirty (30) days of service of Plaintiff's Response to Defendant's First Request for Disclosure to Plaintiff on Defendant, wherein this cause became removable.

11.    Defendant hereby requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Petitioner prays for removal of the above entitled and numbered cause from the County Court at Law No. One of Cameron County, Texas to this Honorable Court.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

BY: _____

Teri L. Danish
Attorney-in-Charge
State Bar No. 05375320
Federal Admissions No. 12862
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FIRST CASH FINANCIAL SERVICES INC,

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Notice of Removal was served upon all counsel of record, to-wit:

> Dennis Sanchez
> Sanchez, Whittington, Janis & Zabarte, L.L.P.
> 100 North Expressway
> Brownsville, Texas 78521-2284
> Attorneys for Plaintiff Deyanira Crespo
>
> David Horton
> Neel & Horton, L.L.P.
> Post Office Box 2159
> South Padre Island, Texas 78597
> Attorneys for Plaintiff Deyanira Crespo

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant to the Federal Rules of Civil Procedure, on this the ____ day of March, 2002.

_____
Teri L. Danish

RUN DATE 03/04/02
RUN TIME  9:14 AM

PAGE: 01
2001-CCL-00524-A

\* \* \* C L E R K ' S   E N T R I E S \* \* \*

FIRST CASH FINANCIAL SERVICES INC, ET AL    (00001404) HON. MARJORY C. BATSELL

DEYANIRA CRESPO    (00086301) HON. DAVID HORTON    (02)

VS

SUIT ON DAMAGES (PERSONAL)

RODRIGUEZ,
COLVIN & CHANEY, LLP

07    05    01
22.00

| Date | Entry | Code |
|---|---|---|
| 07/05/01 | ORIGINAL PETITION FILED | |
| 07/06/01 | CITATION (CM): FIRST CASH FINANCIAL SERVICES INC. | |
| 07/06/01 | SERVED: | |
| 07/06/01 | JURY FEE: Pd. by HON. DAVID HORTON | |
| 08/03/01 | DEFENDANT FIRST CASH FINANCIAL SERVICES ORIGINAL ANSWER, VERI - | |
| 08/03/01 | FIED PLEA, AND JURY DEMAND | AD |
| 08/03/01 | ORIGINAL ANSWER: FIRST CASH FINANCIAL SERVICES INC. | |
| 08/03/01 | JURY FEE: Pd. by HON. MARJORY C. BATSELL | |
| 08/07/01 | TRANSFERRED FROM THE No. 2 COURT | |
| 08/10/01 | PLAINTIFF'S DISCOVERY REQUEST TO DEFENDANT - FIRST NOS. 1-8 | AD |
| 09/17/01 | PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT | EMA |
| 10/25/01 | DEFENDANT'S VERIFIED MOTION TO ABATE | EMA |
| 10/25/01 | ORDER SETTING HEARING ON DEFENDANT'S VERIFIED MOTION TO ABATEEA | |
| 10/25/01 | ORDER GRANTING DEFENDANT'S VERIFIED MOTION TO ABATE | EMA |
| 10/25/01 | ORDER SETTING HEARING ON DEFENDANT'S VERIFIED MOTION TO ABATE; | |
| 10/25/01 | ORDER GRANTING DEFENDANT'S VERIFIED MOTION TO ABATE (SENT FOR SIGN ON 10-29-01) | GG |

| Date | Entry | Code |
|---|---|---|
| 08/07/01 | TRANSFER TO CC#1 (MW) | |
| 10/31/01 | ORDER SETTING HEARING ON DEFENDANT'S VERIFIED M/ABATE SET FOR | CP |
| 10/31/01 | 11-27-01 @ 9:00 AM (RHG/MGC) | GG |
| 11/27/01 | CASE PASSED AS PER FAXED LETTER MGC | SR |
| 12/06/01 | M/ABATE DENIED | SR |

```
RUN DATE 03/04/02                                                          PAGE: 02
RUN TIME  9:14 AM

                              * * * *   C L E R K ' S   E N T R I E S   * * * *

FIRST CASH FINANCIAL SERVICES INC, ET AL    (00008301) HON. DAVID HORTON    (02)         2001-CCL-00524-A

                                                                                         07    05    01
             VS                             SUIT ON DAMAGES (PERSONAL)

                                                                                              22.00
     DEYANIRA CRESPO

                                            (00001404) HON. MARJORY C. BATSELL            RODRIGUEZ,
                                                                                         COLVIN & CHANEY, LLP
```

11/27/01 FILE RETURNED FROM COURT
                                        GG
12/05/01 RCVD FAX COPY PLAINTIFF'S RESPONSE IN
         OPPOSITION TO DEFENDANT'S
                                        SR
12/05/01 VERIFIED MOTION TO ABATE
                                        EMA
12/05/01 'ORDER/ ON: DEFENDANT'S VERIFIED MOTION
         TO ABATE
                                        EMA
12/05/01 RVD RULE 11 AGREEMENT'
                                        EMA
12/13/01 FILE RETURNED FROM COURT
                                        SR
12/19/01 FILE SENT TO COURT FOR REVIEW
                                        LC
12/19/01 ORDER DENYING DEFENDANT'S VERIFIED
         MOTION TO ABATE
                                        LC
12/19/01 (C/DAVID HORTON & TERI DANISH ON
                 12/26/01)
                                        LC
12/21/01 FILE RETURNED FROM COURT
02/06/02 SUPPLEMENTAL CERTIFICATE DEPO:
         DEYANIRA CRESPO
                                        AD



009

Before The
COUNTY COURT AT LAW
CAMERON COUNTY - No.
Brownsville, Texas

**FILED FOR RECORD**

AT _____ O'CLOCK _____ M

JUL 0 5 2001

JOE G. RIVERA
CAMERON COUNTY CLERK
By _____ Deputy

DEYANIRA CRESPO,                          §
                                          §
            Plaintiff,                    §
                                          §
Vs.                                       §
                                          §      Cause No. _____
                                          §
                                          §
FIRST CASH                                §
   FINANCIAL SERVICES INC,                §
f/k/a FIRST CASH INC.,                    §
A Delaware Corporation;  and              §
FULANO DOE,                               §
A Resident of the                         §
State of Texas                            §
                                          §
            Defendants.                   §

---------------------------------------------------------------
**P E T I T I O N**
---------------------------------------------------------------

### I    INTRODUCTION

1.   COMES NOW, DEYANIRA CRESPO PLAINTIFF, and files this
employment discrimination case against    FIRST  CASH  FINANCIAL
SERVICES INC. f/k/a FIRST CASH INC., and Fulano Doe,   her former
employer and manager, respectively.   Plaintiff demands a  jury
trial. Plaintiff alleges her former employer violated Chapter 21.00
*et seq.* of the Texas Labor Code by discriminating against her based
on  gender(female),  pregnancy,  race/national  origin  (Mexican-
American),  and retaliation,  in ways including  subjecting her to
sexual harassment,  retaliating against her because she opposed a

P E T I T I O N                                                    1

**2001-CCL-0524B**

practice made unlawful under the statute, and terminating her employment on or about February 3, 2000.   Plaintiff designates this case a Level III case, requests the court enter a Discovery Control Plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, and will hereafter file a motion for such.

2.    Exhibits attached are **Exhibit A-** Charge of Employment discrimination, filed with the United States Equal Employment Opportunity Commission and the Texas Commission on Human Rights on or about February 8, 2000; **Exhibit B-** Equal Employment Opportunity Commission Dismissal and Notice of Rights, dated April 6, 2001; **Exhibit C-** Notice of Right to File Civil Action, issued by the Texas Commission on Human Rights, dated May 11, 2001; **Exhibit D-** First Cash, Inc. Employee Manual (Revised: September 15, 1998), pages 1, 2, and 5; and, **Exhibit E-** plaintiff's letter to company dated May 10, 2001, regarding any applicable alternative dispute resolution procedure.

## II   JURISDICTION

3.    The court appears to have jurisdiction over the subject matter and the parties.   The amount at issue is within the jurisdictional limits of the court.   All conditions precedent have been completed (See Exhibits A - C.).   However, this case presents a preliminary issue of jurisdiction which is stated in ¶24 - 26, below.

P E T I T I O N                                                        2

### III    PARTIES

### A.    Plaintiff

4.    Plaintiff Deyanira Crespo ("plaintiff" or by name) resides in Los Fresnos, Cameron County, Texas 78840.

### B.    Defendants

5.    Defendant First Cash Financial Services Inc. ("defendant," "company," or by name), f/k/a First Cash Inc., is a Delaware corporation, licensed to do business in Texas (Texas charter #0087484-06).    The defendant company's registered agent for service is shown below.

6.    Defendant Fulano Doe during times relevant was a management employee, and a resident of the State of Texas. Plaintiff at present sues said defendant under the fictitious name of "Fulano Doe," reserving the right to name him by his legal name at a later date.

### IV    SERVICE OF PROCESS

7.    Plaintiff requests the Clerk issue citation for the defendant corporation as "First Cash Financial Services Inc. f/k/a First Cash Inc.," and serve same by certified mail, return receipt requested, restricted delivery, to:

> Mr. Phillip E. Powell
> Registered Agent for Service
> First Cash Financial Services Inc.
> f/k/a First Cash Inc.
> 690 East Lamar Blvd. - Suite 400
> Arlington, TX 76011

8.    Plaintiff at this time does not seek service of process

P E T I T I O N                                                          3

on defendant Fulano Doe. At such time as plaintiff seeks service of process on said defendant, plaintiff will ask the Clerk to issue citation for defendant Fulano Doe in said defendant's legal name, and plaintiff will arrange to have him served by private process server.

### V    STATEMENT OF THE CASE

### A.    Facts and Allegations

9.    The defendant company owns and operates pawn shops in various states throughout the United States. Plaintiff began work with the company on or about December 27, 1994, as an auditor. Approximately two years later plaintiff was promoted to audit supervisor.

10.    Defendant Fulano Doe, a manager, had direct management authority over plaintiff. During times relevant the manager would use sexually explicit and suggestive language in talking to plaintiff. In the presence of other employees he would ask plaintiff embarrassing sexual questions. On occasions Doe would restrict plaintiff's free movement at the workplace by touching and rubing plaintiff's body without plaintiff's consent. Doe also made a degrading comment to plaintiff while plaintiff was pregnant regarding private and intimate matters.

11.    In addition to matters of sexual harassment stated above, plaintiff has reason to believe and does believe that in addition to manager Doe, one or more of the defendant company's managers

PETITION                                                          4

demanded sexual favors of female employees in order for said females to secure favorable terms and conditions of employment, and continued employment.   A supervisor told plaintiff that he had once entered manager Doe's office without knocking, during business hours, and discovered Doe having sex with a female employee.   On another occasion manager Doe attempted to kiss a female employee, in front of other employees, at a party.

12.   The female employees and former employees referred to herein are similarly situated to plaintiff.  Plaintiff alleges such individuals have heretofore been deterred in filing appropriate complaints of sexual harassment because of the defendant company's policies and practices complained of herein. Such policies and practices have had a chilling effect on such individuals' pursuing their rights under law.  Plaintiff reserves the right hereafter to amend in order to assert her claims as a class action on behalf of herself and other similarly situated employees and former employees.

13.   In the fall of 1999 plaintiff finally complained to upper management regarding manager Doe's conduct.   Plaintiff was visibly pregnant at the time.   By such complaint plaintiff opposed a practice made unlawful under Chapter 21.00, et seq. of the Texas Labor Code.   In response to plaintiff's complaint, in November 1999 the company's director of human resources, Jan Hartz, conducted classes for employees regarding sexual harassment.   About three

P E T I T I O N                                                          5

months after plaintiff made the complaint, and after five years of employment, defendants fired plaintiff.

14.  On January 18, 2001 plaintiff delivered a baby by cesarean section.  Plaintiff took two (2) weeks' leave and on Monday, January 31, 2001 plaintiff notified the company she planned to return to work.  Supervisor Nancy Talley told plaintiff the company required a letter from plaintiff's physician before plaintiff could return to work.  Plaintiff provided the company with the physician's letter, which stated plaintiff could return to "light duty."

15.  The next day plaintiff's physician told plaintiff that Jan Hartz, the company's Human Resources Director, had called the doctor's office to inquire regarding what kind of light duty plaintiff could do.  Jan Hartz told that doctor's office that plaintiff's job duties "involved moving heavy objects such as lawn mowers."

16.  On Wednesday, February 3, 2001 plaintiff reported to work, whereupon Supervisor Talley and Director Hartz terminated plaintiff.  Talley and Hartz told plaintiff she was being fired because she violated company policy regarding purchasing merchandise.

17.  Plaintiff alleges one or more of the protected bases stated above were motivating factors in the company's decision to take adverse personnel action against her.

P E T I T I O N                                                          6

### B.    Administrative Proceedings

18.   On or about February 8, 2000 plaintiff filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights("Texas Commission") (Exhibit A).   The EEOC conducted the investigation. On April 6, 2001 the EEOC issued to plaintiff a notice of plaintiff's rights to sue (Exhibit B).   On May 11, 2001 the Texas Commission similarly issued to plaintiff such notice (Exhibit C).

19.   Plaintiff alleges that the company at times relevant did not have an adequate policy or procedure whereby employees could report unlawful harassment, including sexual harassment.   Even if it did have such policy or procedure, the company failed to provide information regarding same to its employees.

20.   Plaintiff alleges the company failed to adequately train defendant Fulano Doe, and its other managers regarding the nature and prevention of unlawful harassment.   The company failed to establish an appropriate internal complaint procedure, failed to inform employees regarding filing of such complaints, or both. After the company knew or should have known that manager Doe was subjecting plaintiff and others similarly situated to sexual harassment, the company was negligent in retaining Doe.

21.   As the result of such practices and customs stated above, the company by and through its managers, including defendant Doe,

P E T I T I O N                                                          7

and perhaps other(s), created and maintained a sexually charged hostile work environment. The company subjected plaintiff and others similarly situated to a pattern and practice of sexual harassment, including both the hostile work environment and *quid pro quo* demands.

### C.    Claims, Causes of Action, and Remedies

#### 1.    Statutory Claims:
#### Texas Labor Code- Chapter 21.00, *et seq*.

22. Defendants have violated the statutory rights of plaintiff and others similarly situated by subjecting them to sexual harassment.

### 2.    Common Law Causes of Action

23. Regarding defendants' conduct upon which plaintiff's claims of sexual harassment are based, defendants have subjected plaintiff and individuals similarly situated to assault, assault and battery, false imprisonment on the company's premises, invasion of privacy, and defendants intentionally inflicted emotional distress upon same. The company negligently failed to train and supervise its supervisors and mangers in matters concerning unlawful harassment. Defendants have subjected plaintiff to defamation, defamation *per se*, and self-compelled defamation, in ways including falsely accusing plaintiff of violating company policy regarding the sale of merchandise.

P E T I T I O N                                                   8

### 3.   Declaratory Relief

24.  Plaintiff requests the court construe and declare the rights of the parties based on the company's employee manual and its putative alternative dispute resolution policy (Exhibit D).

### D.    Miscellaneous Matters

25.  The company's employee manual at times relevant contained at least two (2) provisions here relevant (Exhibit D).  The employee manual states that "THIS MANUAL DOES NOT CONSTITUE [sic] A CONTRACT BETWEEN FIRST CASH, [sic] AND ITS EMPLOYEES." (Exhibit D, page 2).  The manual also states:

> **Arbitration of claims and disputes.**  All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, [sic] shall be settled, [sic] final and binding by [sic] arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

(Exhibit D-3, page 5 of employee manual)

26.  As above stated, the company's manual states that the manual is not a contract, but also states that employees are contractually obligated to use alternative dispute resolution to resolve workplace disputes.  The company's conflicting policy statements present the basic question of jurisdiction of whether this dispute is subject to mandatory final·and binding arbitration, or if this court is the proper forum. Plaintiff wrote the company May 10, 2001 inquiring about alternative dispute resolution

PETITION                                                              9

procedures, and the company did not reply (Exhibit E). Plaintiff prays the court declare the rights of the parties in this matter as the essential preliminary issue of subject matter jurisdiction.

## VI    DAMAGES

27.   The   company   has   engaged   in   unlawful   intentional employment practices as alleged in the administrative complaint and herein.  The company has engaged in a discriminatory practice with malice  or  with  reckless  indifference  to  plaintiff's  statutory rights.  Defendants' conduct was outrageous, and beyond the norms of civilized society.  Defendants acted with intent and malice to cause  plaintiff  harm,  and  did  do  so.  Accordingly,  plaintiff  is entitled to both compensatory and punitive damages.

## VII    CLASS ACTION

28.   Based on defendants' policies, practices, and customs as herein alleged, plaintiff has reason to believe and does believe that defendants engage in, and at all times relevant, engaged in, a  pattern  and  practice  of  sexual  harassment  whereby  defendants created a sexually charged hostile work environment, and subjected plaintiff  and  others  similarly  situated  to  such  hostile  work environment, and unlawful *quid pro quo* demands for sexual favors.

29.   Plaintiff at this time does not assert a class action under Rule 42 of the Texas Rules of Civil Procedure.  However, subject to further proceedings herein, plaintiff reserves the right to bring  this  case  as  a  class  action  on  behalf  of  herself  and

P E T I T I O N                                                10

others similarly situated.

30.  Plaintiff reserves the right by amendment hereto to seek to represent a nationwide class of employees and former employees who were and are subject to sexual harassment based on the hostile work environment and *quid pro quo* demands.

31.  Plaintiff reserves the right by amendment hereto to seek to represent a nationwide class of employees and former employees who were and are adversely affected by the company's putative alternative dispute resolution policy, including subclasses of (a) individuals who were induced to submit workplace disputes to arbitration, and (b) individuals whose rights were chilled by the prospect of being unable to assert their rights in court, and who therefore declined to pursue claims against the company in a timely manner.

### VIII    PLAINTIFF ASSERTS NO FEDERAL CLAIMS

32.  Plaintiff does not assert any federal claims herein, specifically including but not limited to, Title VII of the Civil Rights Act of 1964 and 1991 (As Amended), 42 U.S.C. § 1981, or the Employee Retirement Income Security Act.  Plaintiff only asserts claims and causes of action under the laws of the State of Texas.

### IX    PRAYER FOR RELIEF

33.  WHEREFORE, plaintiff prays the court award such relief as includes that stated below.

34.  DECLARE the rights of the parties with respect to the

P E T I T I O N                                                    11

company's alleged alternative dispute resolution policy as stated in its employee manual.

35.  ORDER the defendant company to reinstate plaintiff as a regular employees, with all backpay and benefits.

36.  ORDER defendant to pay plaintiff damages, including actual, compensatory, and punitive.

37.  ORDER that defendants to pay plaintiff prejudgement and postjudgement interest as may be allowed by law.

38.  ORDER defendants not to retaliate further against plaintiff.

39.  ORDER the defendant company to pay plaintiff reasonable attorney's fees, costs of court, and expenses as provided by law.

40.  ORDER such other and further relief as may be proper and just.

Respectfully Submitted,

Dennis Sanchez
SBOT No. 17569600
SANCHEZ, WHITTINGTON,
JANIS & ZABARTE, L.L.P.
100 North Expressway
Brownsville, TX 78521-2284
956.546.3731 Telephone
956.546.3765 Telecopier

David Horton
SBOT No. 10014500
NEEL & HORTON, L.L.P.
Post Office Box 2159
South Padre Island, Texas 78597
Telephone  956.761.6644
Telecopier 956.761.7424

ATTORNEYS FOR PLAINTIFF
DEYANIRA CRESPO

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | |

Texas Commission On Human Rights _____ and EEOC
*State or local Agency, if any*

NAME *(Indicate Mr., Ms., Mrs.)*
DEYANIRA CRESPO

HOME TELEPHONE *(Include Area Code)*
(956) 544-4413

STREET ADDRESS
2313 Shnidler #138

CITY, STATE AND ZIP CODE
BROWNSVILLE, TEXAS  78521

DATE OF BIRTH
5 / 24/71

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

NAME
FIRST FINANCIAL SERVICES/FIRST CASH, INC.

NUMBER OF EMPLOYEES, MEMBERS
15 - 100 Employees

TELEPHONE *(Include Area Code)*
(817) 460-3947

STREET ADDRESS
690 LAMAR BLVD., STE 400

CITY, STATE AND ZIP CODE
ARLINGTON, TEXAS

COUNTY

NAME

TELEPHONE NUMBER *(Include Area Code)*

STREET ADDRESS

CITY, STATE AND ZIP CODE

COUNTY

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☐ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST    LATEST
01 /31/2000    02 /03 /2000
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I wish to report that on February 3, 2000, I was terminated from First Cash Financial Services. I believe that I was terminated because I had just had a baby and could only work light duty until I recovered from my cesarean section.  I had worked for First Cash Financial Services for several years before this incident and had always obtained favorable job evaluations.  I have attached a copy of one evaluation in my possession for your review.

On January 18, 2000, I had a baby by cesarean section.  I took two(2) weeks off from work and on Monday, January 31, 2000, notified my employer that I planned to return to work.  Nancy Talley, one of my supervisors, notified me that she needed a letter from Doctor Mancillas, my OB/GYN, before she could allow me to return to work.  I provided a letter to Mrs. Talley form my physician which stated I could return to work and work light duty.

The following day I was then notified by the Doctor's office that Jan Heartz, the Director of Human Resources had called them to find out "what kind of light duty I could do" since my job "involved moving heavy objects such as lawnmowers".  This is not true since I work in the Audit Department.  In response to Mrs. Heartz's inquiry, my physician provided a second letter to my employer setting out what he meant by light duty.

On Wednesday, February 3, 2000, I showed up at work on light duty and was notified by Mrs. Talley and Mrs. Heartz that I had been terminated because I had purchased videos from First Cash which my mother had resold at a fleamarket.  The only policy the store had on this was that all purchases by store employees were approved by a manager or supervisor and entered into the computer.  The store should have a copy of all those computer records.  First Cash approved every purchase I ever made from them.

(over)

☒ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY - *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME, THIS DATE
*(Day, month, and year)*
2 /8/00

Date

Charging Party *(Signature)*

EEOC FORM 5 (Rev. 06/92)



A-1

EXHIBIT
A



ANTONIA SALDIVAR
MY COMMISSION EXPIRES
January 4 2003

If they realy had a problem with me purchasing things from them, they should have not approved those sales and I would not have purchased them.  I would ask that you obtain these computer records from First Cash.  Furthermore, First Cash has a progressive discipline policy.  I had never received any written reprimand or warning about this and never knew it was a problem because all purchases were approved by managers or supervisors at First Cash.

I was also told that I was being terminated because a relative came to work for First Cash violating some sort of nepotism policy.  I would like to point out that many other employees have relatives at First Cash and they are not fired.  Furthermore, my non-pregnant relative who worked there a short period of time still works there.  I was the one who was fired.

I believe that I was treated differently because I was a pregnant Hispanic woman who had a baby.

A-2

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DALLAS DISTRICT OFFICE
207 S. HOUSTON STREET
DALLAS, TEXAS 75202

US-TC-CP14

70597X2153




RECEIVED
APR 0 8 2001
BY:

U.S. OFFICIAL MAIL
U.S.POSTAGE
$ 0.34



B-1

EXHIBIT
B

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DISMISSAL AND NOTICE OF RIGHTS

| TO:  Deyanira Crespo<br>417 E. 10th St.<br>Los Fresnos, TX 76566<br><br>___ On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a)). | FROM:<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>DALLAS DISTRICT OFFICE<br>207 S. HOUSTON STREET<br>DALLAS, TEXAS 75202-4726 |
|---|---|

| CHARGE NUMBER<br>360 A0 0748 | EEOC REPRESENTATIVE<br>Victor Galvan | TELEPHONE NUMBER<br>(214) 655-3439 |
|---|---|---|

**YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:**

___  The facts you allege fail to state a claim under any of the statutes enforced by the Commission.

___  Respondent employs less than the required number of employees.

___  Your charge was not timely filed with the Commission, i.e., you waited too long after the date(s) of discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

___  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews or conferences or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

___  The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

_X_  The Commission has concluded that, based on the evidence presented, there is insufficient basis on which to proceed with the investigation. The charge is therefore dismissed.

___  Other:

**- NOTICE OF SUIT RIGHTS -**

_X_  **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this notice; otherwise your right to sue is lost.

___  **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise, your right to sue is lost.

___  **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

I certify that this notice was mailed on the date set out below.

On Behalf of the Commission

_4/06/01_
/DATE

CHESTER V. BAILEY/DISTRICT DIRECTOR

| First Cash Financial<br>Svs.Inc.<br>Jan Hartz/HR Dir.<br>690 E. Lamar Blvd., Ste 400<br>Arlington, 76011 | Neel & Horton, L.L.P.<br>David Horton/Atty.<br>P.O. Box 2159<br>South Padre Island, TX 78597 |
|---|---|

EEOC FORM 161 (SA)     COPIES:  CHARGING PARTY/RESPONDENT/FILE

B-2



Texas Commission On Human Rights
P.O. BOX 13493
AUSTIN, TEXAS 78711



QDN8 79597



RECEIVED
MAY 16 2001
BY:



PRESORTED
FIRST.CLASS

AUSTIN
MAY14'01
TX
6848211

U.S.POSTAGE
$0.267

EXHIBIT
C

C-1

6330 Hwy 290 East, Suite 250
Austin, Texas 78723
P.O. Box 13006
Austin, Texas 78711-3006
http://welcome.to/tchr



(512) 437-3450
(512) 437-3478   Fax
(888) 452-4778   Toll Free
(512) 371-7473   TTY
(800) 735-2989   Texas Relay

## TEXAS COMMISSION ON HUMAN RIGHTS
May 11, 2001

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

David Horton
P O BOX 2159
S. PADRE ISLAND, TX 78597

Re:   *Deyanira Crespo v. FIRST CASH FINANCIAL SVCS.*
      EEOC Complaint #360A00748
      TCHR/Local Commission Complaint #

Pursuant to Sections 21.252 and 21.254 of the Texas Labor Code, and Chapter 327, Section 327.7 of the Commission's Rules, this notice is to advise you of your right to bring a private civil action in state court in the above-referenced case.  PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.  If the above-referenced case was processed by the United States Equal Employment Opportunity Commission or _____, you should also notify that agency as to your intention to file a civil action.

If your case has been successfully resolved by the U. S. Equal Employment Opportunity Commission or _____ through a voluntary settlement or conciliation agreement, you may be prohibited by the terms of such an agreement from filing a private civil action in state court pursuant to the Texas Commission on Human Rights Act, as amended.

The United States Supreme Court has held in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461 (1982), that a federal district court must generally dismiss a Title VII action involving the same parties and raising the same issues as those raised in a prior state court action under Chapter 21 of the Texas Labor Code. Therefore, filing a lawsuit in state court based on the issuance of this notice of right-to-sue may prevent you from filing a lawsuit in federal court based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e - et seq.

Sincerely,

Jonathan Mayo Wilder

Jonathan Mayo Wilder
Director Of Enforcement

### RETAIN ENVELOPE TO VERIFY DATE RECEIVED

Copy to:

Jan. Hartz
690 E. LAMAR BLVD. STE 400
ARLINGTON, TX 76011

*C-2*

CERT-C-NCO2(6/92)

# First Cash, Inc. Employee Manual

Revised:  September 15 1998

D-1

EXHIBIT

D

# WELCOME TO FIRST CASH, INC.

*Congratulations on your decision to join First Cash, Inc. To answer the questions you may have concerning the Company's policies, procedures, and benefits, we are providing you with this Employee Policy Manual. Please read it thoroughly and retain it for future reference. Should you have any questions regarding our policies, please ask your manager or supervisor.*

*Significant care has been taken in the development of these policies; however, policy refinement is an on-going process and you may receive updated information from time-to-time concerning changes to these policies. These should always be filed in a timely manner to insure that your manual is up-to-date.*

*We hope that your employment relationship with First Cash, Inc. will be a rewarding experience and mutually beneficial for both parties. Again, welcome aboard, and the best of success in your new position at First Cash, Inc.!*

**THIS MANUAL DOES NOT CONSTITUE A
CONTRACT BETWEEN FIRST CASH, INC. AND
ITS EMPLOYEES. FIRST CASH, INC. RESERVES
THE RIGHT TO AMEND THE MANUAL AT ANY
TIME WITH OR WITHOUT NOTICE.**

D-2

5

**Outside Employment.**  Employment outside of the Company must be approved in advance by the employee's supervisor.  Outside employment should never interfere with the employee's best performance at First Cash, Inc. and should never result in a conflict of interest such as working for a competitor of the Company.

**Full Time Employment.**  To qualify as a full-time employee and to be eligible to receive the benefits to employees with full-time status, an employee must, on a regular basis, work at least a 40-hour week.  The actual number of hours worked per day or days worked per week may vary depending upon the job or store location to which the employee is assigned.

**Conflicts of Interest.**  Outside employment or any other business-related activity with a *direct or potential competitor of First Cash, Inc. is prohibited.  Employees who work for or who provide or sell proprietary information to such a competitor or potential competitor may, at the discretion of management, be subject to immediate dismissal or other action.*  When you inform the competition about any aspect of our business, you may undermine job security for yourself and your co-workers, as well as risk criminal prosecution.

**Information.**  Employees of First Cash, Inc. are expected to keep the Company informed of any changes, e.g., place of residence or telephone number, so that these records will always be complete and up to date.

**Problem Resolution.**  Management will attempt to review and resolve your job-related problems in a prompt and equitable manner.  Employees are encouraged to present all such problems to their immediate supervisor and/or the Human Resources Department. If a problem persists, employees then must contact the Human Resources Department to proceed to the arbitration process listed below.

**Arbitration of claims and disputes.**  All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, Inc.) shall be settled, final and binding by arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

**Attendance.**  Employees are expected to report to work whenever scheduled and be at their work location at their starting time and again after their lunch break at the prescribed time.  Failure to observe working hours reduces productivity and places an unfair burden on fellow employees.

Whenever an employee is unable to report to work because of illness or emergency, the employee must call his/her supervisor as far in advance as possible prior to his/her scheduled starting time, or in the case of emergency, as soon as practicable.  If the supervisor is unavailable, the employee should notify another person in the supervisory chain (i.e. if the manager is not available, talk to the assistant manager).

Revised:  September 15 1998

D-3

LAW OFFICES OF

# NEEL & HORTON, L.L.P.

JAMES J. NEEL
DAVID HORTON

'POSSUM PLAZA • 2ND FLOOR
POST OFFICE BOX 2159
SOUTH PADRE ISLAND, TEXAS 78597
TELEPHONE 956.761.6644 • TELECOPIER 956.761.7424

SOUTHWEST TEXAS - ALPINE
915.837.3162



006                    May 10, 2001                    COPY

Ms. Jan Hartz
Human Resources Director
FIRST CASH FINANCIAL SERVICES, INC./
FIRST CASH PAWN, INC.
690 Lamar Blvd. - Suite 400
Arlington, TX 76011
817.460.3947 t
817.461.7019 f



RE        :    *Deyanira Crespo vs.*
               *First Cash Financial Services, Inc.; and*
               *First Cash, Inc.*
               Cause No. _____
               (County Court at Law - No. __ /Cameron County, TX


SUBJ      :    Miscellaneous

Dear Ms. Hartz:

    . In reference your letter to me dated May 3, 2001, enclosed is
a copy of my letter dated May 8, 2001 to the Texas Commission on
Human Rights, requesting the Commission issue a Notice of Right to
File Civil Action.  Upon receipt of the notice, we propose to file
suit as indicated above.

    Regarding filing suit, we would appreciate your informing us
if company policy provides for any internal administrative appeals,
or other dispute resolution process, which the company may contend
Ms. Crespo must complete before filing suit.

    We look forward to hearing from you.

                              Sincerely,




                              David Horton

enclosure: asa

c:  Ms. Deyanira Crespo

    Mr. Dennis Sanchez



EXHIBIT
E

Citation for Personal Service   - BY CERTIFIED MAIL        Lit. Seq. # 5.002.01

No. 2001-CCL-00524-B

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  "You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: FIRST CASH FINANCIAL SERVICES INC.
    REGISTERED AGENT FOR SERVICE MR. PHILLIP E. POWELL
    F/K/A FIRST CASH INC.
    690 EAST LAMAR BLVD.-SUITE 400
    ARLINGTON, TX 76011
    817. 460.3947 T

the    DEFENDANT    , GREETING:

You are commanded to appear by filing a written answer to the Plaintiff's ORIGINAL PETITION

at or before 10:00 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable County Court At Law No. 2 of Cameron County at the Court House of said county in Brownsville, Texas.

Said Plaintiff's Petition was filed in said court, by HON. DAVID HORTON    (Attorney for Plaintiff or Plaintiff), whose address is P.O. BOX 2160 S. PADRE ISLAND, TX    78597 on the 5th day of    JULY    , A.D. 2001, in this case numbered 2001-CCL-00524-B on the docket of said court, and styled,

DEYANIRA CRESPO
vs.
FIRST CASH FINANCIAL SERVICES INC, ET AL

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's    ORIGINAL PETITION

accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 6th day of    JULY    , A.D. 2001.

JOE G. RIVERA    , County Clerk
Cameron County
974 E. Harrison St.
(P.O. Box 2178)
Brownsville, Texas 78522-2178

By: _Lucila Cardenas_ , Deputy
       LUCILA CARDENAS

CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the 6th of JULY    , 2001, I mailed to

FIRST CASH FINANCIAL SERVICES INC. by registered mail or certified mail with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO.   587940467
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

JOE G. RIVERA    , County Clerk
Cameron County, Texas

By: _Lucila Cardenas_ , Deputy
       LUCILA CARDENAS

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Article Sent To: | |
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Name (Please Print Clearly) (To be completed by mailer)
Mr Phillip E. Powell
Street, Apt. No.; or PO Box No.
690 East Lamar Blvd. STE 400
City, State, ZIP+4
Arlington, Tv. 76011

PS Form 3800, July 1999          See Reverse for Instructions

7091 3320 0005 8794 0467



CAUSE NO. 2001-CCL-00524-B

DEYANIRA CRESPO,    *    IN THE COUNTY COURT
                    *
VS.                 *    AT LAW NO. TWO
                    *
FIRST CASH          *
FINANCIAL SERVICES INC,  *
F/K/A FIRST CASH INC.,  *    CAMERON COUNTY, TEXAS

**FILED FOR RECORD**
AT 3:0 O'CLOCK P M
AUG 03 2001
JOE G. RIVERA
CAMERON COUNTY CLERK
By_____Deputy

## DEFENDANT FIRST CASH FINANCIAL SERVICES
## ORIGINAL ANSWER, VERIFIED PLEA, AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FIRST CASH FINANCIAL SERVICES, Defendant in the above entitled and numbered cause, and files this its Original Answer and Jury Demand in response to Plaintiff's Original Petition, and in support thereof, would show the Court as follows:

### I.

### GENERAL DENIAL

Defendant First Cash Financial Services herein avails itself of the opportunity provided by Rule 92 of the Texas Rules of Civil Procedure to file a general denial herein; and in compliance with said Rule, Defendant denies each and every, all and singular, the material allegations contained in Plaintiff's live pleading and states that these are matters that should be proven by Plaintiff as required by law; and Defendant would require strict proof thereof.

### II.

### VERIFIED PLEA

2.01   For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff cannot pursue this present action in light of the arbitration agreement entered into between Plaintiff and Defendant, as evidenced by the language in the First Cash, Inc., Employee Manual, pages of which are

even purportedly offered as Exhibit D to Plaintiff's Original Petition. For this reason, Defendant would request that this cause of action be abated.

## III.

## AFFIRMATIVE DEFENSES

3.02  For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Defendant exercised reasonable care to prevent and promptly correct any improper behavior on the part of its employees.

3.03  For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff failed to take advantage of preventive or corrective measures offered to her by Defendant, or otherwise failed to avoid harm.

3.04  For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff's claims are barred, in whole or in part, due to the contributory negligence of Plaintiff in that she failed to exercise ordinary care, caution and prudence to avoid the incident at issue. Plaintiff's acts and omissions, whether taken together or separately, proximately caused the injuries and damages to Plaintiff which are alleged in Plaintiff's petition.

3.05  For further answer, if such be necessary, and pleading in the alternative, Plaintiff's claims are barred for failure to exhaust her administrative remedies.

3.06  For further answer, if such be necessary, and pleading in the alternative, Defendant affirmatively alleges that Plaintiff's claims for intentional infliction of emotional distress are pre-empted by the Texas Commission on Human Rights Act.

3.07  For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff is not entitled to recover any damages for the cause of action set forth in Paragraph 23 of Plaintiff's Original Petition entitled "Intentional Infliction of Emotional Distress" because Plaintiff has failed to plead or prove any conduct on the part of this Defendant which is "extreme and

outrageous" as required by the Texas Supreme Court in <u>Wornick Co. v. Casas</u>, 856 S.W.2d 732 (Tex. 1993).

3.08    For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that if Plaintiff was injured as alleged, which is not admitted but is expressly denied, such injuries were caused or contributed to, in whole or in part, by a party for whom Defendant is not responsible.

3.09    For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that the acts or omissions of Plaintiff or other third parties were the sole proximate cause or a new and independent cause of the incident and injuries complained of in this lawsuit.

3.10    For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate the effect of her alleged injuries and damages as required by law.

3.11    For further answer, if such be necessary, and pleading in the alternative, Defendant further invokes the provisions of §33.001 of the Texas Civil Practice & Remedies Code. In this case, Defendant alleges that the negligence of Plaintiff is fifty-one percent (51%) or greater, and therefore, no damages may be recovered from Defendant.

3.12    For further answer, if such be necessary, and pleading in the alternative, Defendant further invokes the provisions of §33.013 of the Texas Civil Practices & Remedies Code in the unlikely event that liability is established by the Plaintiff in this cause.

3.13    For further answer, if such be necessary, and pleading in the alternative, Defendant further specifically denies that it is liable for prejudgment interest in this cause of action as pled by Plaintiff.

3.14   For further answer, if such be necessary, and pleading in the alternative, Defendant further specifically pleads the limitation of recovery of exemplary damages as set forth in Section 41.008, et seq. of the Texas Civil Practice & Remedies Code.

3.15   For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively denies that it is liable for exemplary damages and pleads affirmatively the provisions of Chapter 41, of the Texas Civil Practices & Remedies Code, including the provisions on applicability, standards for recovery, preclusions, prejudgment interest, and limitations on amount.

3.16   For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively states that an award of punitive damages in this case would violate the procedural due process guaranteed by the Constitution of the United States. Texas Law, and the instructions given to the jury, are vague and standardless as to whether and how much to punish a defendant, and are likely to produce arbitrary and capricious results. Therefore, any award of punitive damages should be disallowed, or declared null and void.

·  3.17   For further answer, if such be necessary, and pleading in the alternative, Defendant further affirmatively alleges that Plaintiff is not entitled to exemplary or punitive damages as alleged, for the reason that exemplary damages are unconstitutional and violative of the provisions of the United States Constitution and the Texas Constitution, including but not limited to the following provisions:

(a)   Proscription on excessive fines. U. S. Constitution Amendment 8; Texas Constitution Article I, Section 13.

(b)   Requirements of Due Process. U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 13 and 19.

(c)   Requirement of Equal Protection Under the Law. U. S. Constitution Amendments 5 and 14; Texas Constitution Article I, Sections 3 and 3a.

(d)   Proscription on Ex Post Facto and Retroactive Law. U. S. Constitution Article I, Section 10; Texas Constitution Article I, Section 16.

(e)    Such punitive damages are penal in nature.  Under Texas law, they are not tied to any fair, just, and reasonable relation to actual damages. Consequently, exemplary damages violate the contract clause of the U. S. Constitution, U. S. Constitution Article I, Section 10.


## IV.

## JURY DEMAND

Defendant hereby requests a trial by jury and tenders the jury fee herewith.

WHEREFORE, Defendant First Cash Financial Services prays that upon final trial and hearing hereof, it have judgment in accordance with the law and facts as found by this Honorable Court and Jury, and for such other and further relief, legal or equitable, general or special, to which it may show itself justly entitled to receive.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____

Marjory C. Batsell
State Bar No. 04631400
Teri L. Danish
State Bar No. 05375320
Alison D. Kennamer
State Bar No. 11280400
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FIRST CASH FINANCIAL SERVICES INC,
ET AL



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant First Cash Financial Services Original Answer, Verified Plea, and Jury Demand was served upon all counsel of record, to-wit:

> Dennis Sanchez
> SBOT No. 17569600
> SANCHEZ, WHITTINGTON, JANIS & ZABARTE, L.L.P.
> 100 North Expressway
> Brownsville, Texas 78521-2284
>
> David Horton
> SBOT No. 10014500
> NEEL & HORTON, L.L.P.
> Post Office Box 2159
> South Padre Island, Texas 78597
>
> ATTORNEYS FOR PLAINTIFF
> DEYANIRA CRESPO

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the <u>3rd</u> day of August, 2001.

_____
Alison D. Kennamer

## VERIFICATION OF ALISON D. KENNAMER

STATE OF TEXAS

COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared ALISON D. KENNAMER, who being by me duly sworn, on her oath deposed and said that she is an Attorney of Record for Defendant First Cash Financial Services in the above cause; and that the statements contained in the Verified Plea, in paragraph II, are true and correct and within her personal knowledge as stated therein.

Alison D. Kennamer

SUBSCRIBED AND SWORN TO before me on the 3ʳᵈ day of August, 2001, to certify which witness my hand and official seal.

Notary Public For The State Of Texas



CRUZ N. RAMIREZ
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 12-23-2001

CAUSE NO. 2001-CCL-00524-B



FILED FOR RECORD

DEYANIRA CRESPO,　　　　　*　　IN THE COUNTY COURT

VS.　　　　　　　　　　　　*　　AT LAW NO. TWO

FIRST CASH　　　　　　　　*
FINANCIAL SERVICES INC,　　*
F/K/A FIRST CASH INC.,　　　*　　CAMERON COUNTY, TEXAS

O'CLOCK_____M

OCT 25 2001

JOE G. RIVERA
CAMERON COUNTY CLERK
By_____Deputy

## DEFENDANT'S VERIFIED MOTION TO ABATE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant First Cash Financial Services, Inc. f/k/a First Cash, Inc. ("First Cash") and files its Verified Motion to Abate requesting the Court to abate this lawsuit pursuant to Rule 85, Texas Rules of Civil Procedure as follows:

I.

Plaintiff's petition contains allegations of gender, pregnancy, and race/national origin discrimination, retaliation and sexual harassment relating to her employment with First Cash. At the time Plaintiff was hired, she was provided with an Associate's Handbook which contained the following provision:

> **Arbitration of Claims:**　All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, Inc.) shall be settled, final and binding by arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

(Exhibit A, p. 5 attached.)　Plaintiff signed an acknowledgement that she received a copy of the Handbook, and agreed to abide by its provisions (Exhibit B attached).　Plaintiff

later signed another acknowledgement that she had again received "all First Cash, Inc. policies," and again agreed to abide by those policies (Exhibit C attached).

## II.

### ARBITRATION IS REQUIRED

Both federal and state law strongly favor arbitration. *EZ Pawn Corporation v. Mancias*, 934 S.W.2d 87 (Tex. 1996); *Cantella Co., Inc. v. Goodwin*, 924 S.W.2d 943 (Tex. 1996). Courts must resolve any doubts about arbitration agreements in favor of arbitration and a party opposing arbitration bears the burden of defeating the agreement. *Cantella*, 924 S.W.2d at 944. The Federal Arbitration Act, 9 U.S.C. § 2, applies in state courts, and preempts state anti-arbitration laws to the contrary. *Circuit City Stores v. Adams*, ___ U.S. ___, 121 S.Ct. 1302 (2001); *Southland Corp v. Keating*, 465 U.S. 1, 16 (1984); *see also Palm Harbor Homes v. McCoy*, 944 S.W.2d 716, 721 (Tex.App. -- Ft. Worth 1997)(holding that FAA preempted Texas Arbitration Act's requirement that party's attorney sign agreement). The United States Supreme Court has recently held that the FAA applies to all contracts of employment. *Circuit City Stores, supra.*

There is nothing *per se* unconscionable about arbitration agreements, and a party who has had an opportunity to read an arbitration agreement and signs it is presumed to know its contents. *EZ Pawn Corporation*, 934 S.W.2d at 90. Real or perceived unequal bargaining power between an employer and employee is insufficient to defeat an agreement to arbitrate. *Id.*

The attached arbitration provisions and plaintiff's written agreement to abide by its terms clearly apply to the subject matter of this lawsuit. Plaintiff's allegations stem

exclusively from her employment with First Cash and are therefore subject to arbitration. As a result, Defendants respectfully request that the Court abate these proceedings and enter an order compelling arbitration of this case.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____

Teri L. Danish
State Bar No. 05375320
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT
FIRST CASH FINANCIAL SERVICES,
INC. f/k/a FIRST CASH, INC.

## CERTIFICATE OF CONFERENCE

On October 11, 2001, Defendant's counsel to contacted Plaintiff's counsel to discuss the necessity of this motion. Plaintiff is opposed to this motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Motion to Abate was served upon all counsel of record, to-wit:

>Dennis Sanchez
>Sanchez, Whittington, Janis & Zabarte, L.L.P.
>100 North Expressway
>Brownsville, Texas 78521-2284
>
>David Horton
>Neel & Horton, L.L.P.
>Post Office Box 2159
>South Padre Island, Texas 78597
>Attorneys for Plaintiff

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Texas Rules of Civil Procedure on this the 25th day of October, 2001.

_____
Teri L. Danish

## VERIFICATION OF TERI L. DANISH

STATE OF TEXAS

COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared TERI L. DANISH, who being by me duly sworn, on her oath deposed and said that she is the Attorney of Record for Defendant First Cash Financial Services, Inc. f/k/a First Cash Pawn in the above-entitled and numbered cause; that she is familiar with the facts contained in the above and foregoing Verified Motion to Abate; and that every statement contained therein are within her personal knowledge, true and correct.

TERI L. DANISH

SUBSCRIBED AND SWORN TO before me on the 25th day of October, 2001, to certify which witness my hand and official seal.

Notary Public For The State Of Texas

MIRNA GRACIA
Notary Public, State of Texas
My Commission Expires
March 14, 2005

# First Cash, Inc.
# Employee
# Manual



EXHIBIT

"A"

Revised. September 15 1998

# WELCOME TO FIRST CASH, INC.

*Congratulations on your decision to join First Cash, Inc. To answer the questions you may have concerning the Company's policies, procedures, and benefits, we are providing you with this Employee Policy Manual. Please read it thoroughly and retain it for future reference. Should you have any questions regarding our policies, please ask your manager or supervisor.*

*Significant care has been taken in the development of these policies; however, policy refinement is an on-going process and you may receive updated information from time-to-time concerning changes to these policies. These should always be filed in a timely manner to insure that your manual is up-to-date.*

*We hope that your employment relationship with First Cash, Inc. will be a rewarding experience and mutually beneficial for both parties. Again, welcome aboard, and the best of success in your new position at First Cash, Inc.!*

**THIS MANUAL DOES NOT CONSTITUE A
CONTRACT BETWEEN FIRST CASH, INC. AND
ITS EMPLOYEES. FIRST CASH, INC. RESERVES
THE RIGHT TO AMEND THE MANUAL AT ANY
TIME WITH OR WITHOUT NOTICE.**

Revised September 15 1998

3

## First Cash, Inc. Policies and Standards of Performance

### Preamble

The following pages review selected policies of First Cash, Inc. and standards applicable to all its employees including, but not limited to:

    1) benefits provided to its employees; and

    2) various standards and expectations of performance for key aspects of the job of pawnbroker with First Cash, Inc.

The Policy Manual is provided for the information and use of employees of First Cash, Inc. The policies and standards discussed herein are intended as guides to the job-related behavior of all employees; however, neither the manual nor its provisions to employees creates an employment contract between First Cash, Inc. and any employee. First Cash, Inc. reserves the right, at will and at its sole discretion, to terminate any employee, with or without cause, and all employees are free to terminate their employment at any time, at will. No supervisor, manager, or representative of First Cash, Inc. other than the Chief Executive Officer, has the authority to enter into any agreement with employees for employment for any specified period, to modify the terms of this handbook, or to make any promises or commitments relating to the employee's employment with First Cash, Inc.

All employees must abide by the policies and performance standards specified herein. Failure to act in accordance with these policies and standards may result in immediate termination of employment and loss of all benefits. Satisfactory performance in accordance with these policies and standards is a prerequisite to access to the benefits provided by the Company, but such satisfactory performance may not be the sole criterion for determining an employee's continued employment or advancement.

There can be no tolerance for deviation from these policies and standards for the simple reason that any such deviation represents either 1) a violation of law that could result in loss of employment and possibly arrest, conviction and jail - not only for the employee who violates the policies and standards but, potentially, for every employee; or 2) a violation of the minimal standards of honesty or fiduciary responsibility necessary to a business that involves the handling of money or property; or 3) errors of judgement or job performance that call into question the employee's ability to satisfactorily perform the job he or she has been hired to do.

Since no policy statement can cover every contingency or nuance of the law, following these policies and standards does not relieve each employee of the duty to become acquainted with the laws and customs applicable to the pawn brokering profession, or to comply with these and all other laws or customs in effect in the jurisdiction served by First Cash, Inc.

# EMPLOYMENT PRACTICES

First Cash, Inc. is an Equal Opportunity Employer and offers employment on the basis of merit, qualifications, and competency to all persons without discrimination because of race, color, religious creed, age, sex, national origin, handicap, disability, or any other characteristic protected by law. First Cash, Inc. will reasonably accommodate disabled individuals as required by law.

**Hiring Approvals.** Store Managers and above have hiring authorization. Prior approval by the Area Supervisor and/or Human Resources Director is required. Completion of the application form and background check results are mandatory before an offer of employment may take effect.

It is mandatory that all new hire paperwork be completed within the first week of employment. Disciplinary action up to and including termination of employment will occur if the new hire documents are not completed within this time frame. Termination may also occur for operations employees if the pawnbroker license is denied.

**Employment of Relatives.** Generally, it is the policy of First Cash, Inc. not to employ related individuals. Any exception to this policy will be authorized by the Senior Vice President or Chief Operating Officer of First Cash, Inc.

**Referral Fee.** Associates will be awarded a $200 "referral fee" if they refer an individual who is hired and remains employed with First Cash, Inc. for six months.

**Rehires.** Previous First Cash, Inc. employees who wish to be considered for re-hire must re-apply for open positions. They will be considered along with other candidates for the position(s).

**Resignations.** Employees are requested to give a written letter of their resignation with as much notice as possible. There may be forms for your information and/or signature regarding the 401(k) plan or insurance programs (COBRA). Employees will have the opportunity of an exit interview with their immediate supervisor and/or Human Resources Director.

**Reference Checks/Employment Verifications.** All inquiries regarding performance, salary, position held, etc. concerning current or former First Cash, Inc. employees are to be directed to the Human Resources department.

**Criminal Convictions.** It is the policy of the Company not to employ anyone who has been convicted of any criminal offense involving dishonesty or breach of trust. A current employee convicted of a criminal offense while employed with the company may receive disciplinary counseling or may be terminated depending on the nature of the criminal conviction.

**Outside Employment.** Employment outside of the Company must be approved in advance by the employee's supervisor. Outside employment should never interfere with the employee's best performance at First Cash, Inc. and should never result in a conflict of interest such as working for a competitor of the Company.

**Full Time Employment.** To qualify as a full-time employee and to be eligible to receive the benefits to employees with full-time status, an employee must, on a regular basis, work at least a 40-hour week. The actual number of hours worked per day or days worked per week may vary depending upon the job or store location to which the employee is assigned.

**Conflicts of Interest.** Outside employment or any other business-related activity with a direct or potential competitor of First Cash, Inc. is prohibited. Employees who work for or who provide or sell proprietary information to such a competitor or potential competitor may, at the discretion of management, be subject to immediate dismissal or other action. When you inform the competition about any aspect of our business, you may undermine job security for yourself and your co-workers, as well as risk criminal prosecution.

**Information.** Employees of First Cash, Inc. are expected to keep the Company informed of any changes, e.g., place of residence or telephone number, so that these records will always be complete and up to date.

**Problem Resolution.** Management will attempt to review and resolve your job-related problems in a prompt and equitable manner. Employees are encouraged to present all such problems to their immediate supervisor and/or the Human Resources Department. If a problem persists, employees then must contact the Human Resources Department to proceed to the arbitration process listed below.

**Arbitration of claims and disputes.** All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, Inc.) shall be settled, final and binding by arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

**Attendance.** Employees are expected to report to work whenever scheduled and be at their work location at their starting time and again after their lunch break at the prescribed time. Failure to observe working hours reduces productivity and places an unfair burden on fellow employees.

Whenever an employee is unable to report to work because of illness or emergency, the employee must call his/her supervisor as far in advance as possible prior to his/her scheduled starting time, or in the case of emergency, as soon as practicable. If the supervisor is unavailable, the employee should notify another person in the supervisory chain (i.e. if the manager is not available, talk to the assistant manager).

Employees are expected to anticipate and handle their personal business during there off-hours.

Failure to provide proper notification of an absence or lateness, unexcused absences, late arrivals or early departures from work (unless as a reasonable accommodation to a disability or FMLA leave) may result in disciplinary action, up to and including discharge.

Any employee who fails to report to work for up to three (3) consecutive work days, and fails to notify his/her supervisor in advance of the reason for the failure to report to work, will be considered to have resigned his/her position with First Cash, Inc

**Driving on Company Business**   When you drive an automobile on Company business, you will be reimbursed according to the Company's current allowance after submitting the appropriate documentation to your supervisor. All employees driving on Company business must possess a valid drivers license and have a currently paid auto insurance policy that meets or exceeds requirements mandated by the state in which the vehicle is being operated in. Safety rules of First Cash, Inc.'s Safety Program concerning vehicles and driving should be followed at all times.

**Suggestions**   You are encouraged to present suggestions for improvement in procedures and working conditions so that management may give them consideration for adoption where feasible.

**Safety.** It is the Company's policy to provide a safe and healthy workplace. Supervisors are to promote safe working practices by maintaining property and equipment in safe operating condition and by keeping you aware of applicable safety procedures. You are to report all work-related injuries to your manager or supervisor immediately regardless of the nature or severity of the injury. At Texas locations, if the injury requires more than first aid, the employee is required to go to an authorized clinic, hospital, or physician. If the employee should choose to go to his or her own doctor, the Company will not be responsible for any expenses incurred. If the employee is sent home or further treatment is necessary due to the job related injury, the employee will be paid for the remainder of the day on which the accidental injury occurred. At Oklahoma, Maryland, Missouri, Washington D.C., California, Virginia and Washington State locations, employees are covered by Workers' Compensation Insurance and are entitled to benefits under the rules and regulations of same

You are also to report all unsafe practices to your supervisor immediately. You are to observe all safety rules and regulations and are expected to ask for assistance when in doubt about the operating procedures of equipment and tools. Failure to observe safety rules and procedures may result in disciplinary action.

**Searches.** To safeguard the property of our employees and customers, First Cash, Inc. reserves the right to inspect any packages, parcels, purses, handbags, briefcases, lunchboxes, or any other possessions or articles carried to and from First Cash, Inc.'s

property by employees and other persons entering and leaving our premises. In addition, the Company reserves the right to search any employee's office, desk, files, lockers, etc. The property of the Company is issued for the use of employees only during their employment with the Company. Inspections may be conducted at any time at the discretion of the Company.

Employees working on or entering or leaving the premises who refuse to cooperate in an inspection, as well as employees who after the inspection are in possession of stolen property or illegal drugs will be subjected to disciplinary action up to and including termination.

**Appearance/Dress Code.** The professional atmosphere of First Cash, Inc. is maintained in part by the image our employees present to others and should reflect the standards of the local business community.

Employees are expected to dress in a conservative and professional manner that is appropriate for their position and to adhere to common practices of modesty, cleanliness and neatness which will contribute to the professional atmosphere of our stores.

Managers and supervisors are responsible for clarifying any questions employees have about acceptable work attire in their departments.

All employees are expected to maintain good grooming and hygiene habits and to dress in an attire suitable for the workplace, which presents a neat and professional image for the Company.

This includes:

- Bathing daily
- Neatly styled, combed hair
- Wearing clean and pressed clothing
- Tucking in shirts at all times
- Wearing socks with all long pants
- Always wearing a belt with shorts and long pants.
- Shaving daily unless a beard or mustache is worn—then neat trimming is required
- No earrings on males
- No long hair or pony-tail on males
- Tattoos cannot be visible
- Baseball caps or any other head covering are not allowed.
- Name tags should be worn at all times

Examples of appropriate attire: Company shirt with khaki type pants, slacks, blue jeans, skirt, or walking shorts. Proper undergarments must be worn.

Examples of inappropriate attire:   See-through clothing, clothing with obscene or offensive advertisements, crop tops, tube tops, halters, short-shorts, thongs or flip-flop shoes.

The first violation of this policy will result in the employee being sent home without pay to correct the violation.  Any further violations may result in corrective actions up to and including termination.

## SUMMARY OF BENEFITS

**Dental Insurance.**  All full-time employees are eligible immediately.  Call the corporate office for an application, a directory of dentists in your area, and a schedule of benefits. There are no claim forms, no deductibles, and no waiting period.  Coverage is available the first day of the month after the application is processed.  The plan also includes vision care.

**Health Insurance.**   Management personnel (supervisors, mangers, and assistant managers) are eligible after a six-month waiting period.  Call the corporate office for an application and a benefit plan booklet.   Coverage includes a preferred provider organization (PPO), discount pharmacy network, and a $10,000 life insurance policy.

**401(k).**  All employees are eligible after a one-year waiting period.  Call the corporate office for information and an application.  A seminar is provided for those employees who are interested.

**Holidays.**  First Cash, Inc. may elect from time to time to close for certain secular or religious holidays.  Store locations will be closed on Thanksgiving Day, Christmas Day, and Easter.  Administrative employees will have three additional holidays.  **First Cash, Inc. recognizes that some employees may wish to observe, as periods of worship or commemoration, certain days, which are not included in the regular holiday schedule.  Accordingly, employees who would like to take a day off for such reasons may be permitted to do so if the employee gives sufficient notice to his/her supervisor, and the employee's absence will not result in an undue hardship on the business of First Cash, Inc.**

**Vacation.**  Each employee that has worked for the Company at least 6 months will be eligible for 1/2-week vacation every six months.  Each employee that has worked for the Company 2 years will be eligible for 1-week vacation every six months.  A week's vacation is defined as 40 regular hours of scheduled work.  All vacation time must be used on or before each July 31st or it will be forfeited   Any unpaid vacation leave is forfeited if the associate or the Company terminates employment.  Exceptions may be made at the discretion of management.

It may not be possible to schedule more than one employee for vacation at a time, especially employees from the same store.  To avoid conflicts, employees should provide

notice at least 1 month in advance of their desire to use vacation time. Employees who do provide sufficient notice will be granted vacation on a first-come basis. Employees who do not provide sufficient notice, or who apply for vacation during a period already committed to a co-worker, may be required to reschedule.

## FAMILY AND MEDICAL LEAVE

1.   **Scope of the Policy**

An eligible employee is entitled to 12 weeks of unpaid leave in a 12-month period for:

A    the birth of a child or the placement of a child for adoption or foster care

B.   to care for the employee's seriously ill spouse, child, or parents

C.   recovery from the employee's own serious illness that makes the employee unable to perform the essential functions of his or her job.

An employee is eligible for FMLA leave if he or she has worked for First Cash, Inc. for 12 months and worked at least 1,250 hours during those 12 months.

2.   **Conditions of Leave**

A    Notice. An employee should request FMLA leave in writing at least 30 days prior to the date he or she intends for the leave to begin. When the leave must begin in less than 30 days, the employee must give written notice to First Cash, Inc. of the need for the leave as soon as is practicable. In emergency circumstances, oral notice will suffice. Failure to provide notice in accordance with this policy may result in discipline, up to and including termination.

B.   Exhaustion of Accrued Leave. Employees must exhaust all available paid leave before taking unpaid leave. Employees are entitled to a maximum of 12 weeks FMLA leave in any combination of paid and unpaid leave.

C.   Medical Certification. If an employee requests FMLA leave due to his or her serious health condition or to care for a family member with a serious health condition, he or she will be required to provide medical certification in support of the request. The

employee must provide the medical certification within 15 calendar days of his or her initial request for leave, unless alternate arrangements are made with your supervisor  Failure to provide the medical certification in a timely manner may result in the denial of leave until  the certificate is submitted.

First Cash, Inc. is entitled to request, at its expense, a second medical opinion concerning the certification.  If the second opinion does not concur with the original opinion, First Cash, Inc. may request a third opinion for which it must also pay.  The third opinion is final and binding on First Cash, Inc. and the employee.

First Cash, Inc. is also entitled to require that employees submit re-certification of a serious medical condition periodically during family medical leave.  Additionally, employees will be required to present a fitness-for-duty certificate upon return to work following a leave for their own illness.

**Family Death.**  You will be paid for any scheduled workdays that fall within 3 calendar days of the death of an immediate family member.  If additional days are needed, you should talk to your manager.  Additional days would be without pay.  The immediate family for you (and your spouse) is defined as great grandparents, grandparents, father, mother, brother, sister, children, and immediate grandchildren.

**Jury Duty.**  Jury duty is considered an obligation of responsible citizenship and necessary time off is provided for you with pay.  Employees may keep the routine jury payment.  This will also apply if you are summoned or subpoenaed to appear in court for other than personal reasons or actions initiated by you.  You need to give your manager a copy of your summons or subpoena immediately.  This allows them planning time to cover your workload.  If selected as a juror, documentation must be presented to your manager for the period of absence.  If you are released from jury service or court during your work hours, you need to call your manager for instructions on whether you need to return to work.  We may request a postponement of your jury duty if the Company vitally needs your services at the time you are called to serve.

**Military Leave.**  Employees will be granted a leave of absence without pay for absences necessitated by voluntary or involuntary service in the uniformed services.  This includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty and time absent for examination to determine the fitness of the person to perform any such duty.  "Uniformed services" means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service and any other category designated by the President in time of war and emergency.

An employee returning from a military leave of absence will be reinstated in accordance with the Uniformed Services Employment and Reemployment Rights Act, provided he or

11

she makes a timely application for reemployment and provides documentation of the length and character of the service.

Applications for reemployment must be made as follows:

1) Services less than 31 days

Employee must report to the Company at the start of the first work day following the completion of service and the expiration of 8 hours after a time for safe transportation back to his residence.

2) Service more than 31 days but less than 181 days:

Employee must submit application for reemployment no later than 14 days following completion of service.

3) Service over 181 days:

Employee must submit application no later than 90 days after completion of service.

## WORKERS' COMPENSATION NON-SUBSCRIBER

First Cash, Inc. does not carry Workers' Compensation Insurance to cover employees injured on the job at Texas locations. This means in the event of an on-the-job injury, the employee will not be covered by Workers' Compensation Insurance and the employee will not be entitled to benefits under the Texas Workers' Compensation laws. First Cash, Inc. instead provides an ERISA plan that defines benefits for work related injuries.

First Cash, Inc. carries Workers' Compensation Insurance to cover employees injured on the job at Oklahoma, Maryland, Missouri, Virginia, Washington D.C., California, and Washington State locations.

## STANDARDS OF PERFORMANCE

Deviation from the policies set forth in this section may result in disciplinary action, up to and including termination of employment.

**Work conduct.** First Cash, Inc. expects responsible, professional behavior from all employees. The following are examples of behaviors that are inappropriate and unacceptable in our work environment. The following types of behavior will be considered misconduct. This list is not intended to be all inclusive and First Cash, Inc. reserves the right to take whatever action it deems appropriate in each individual circumstance based upon the seriousness of the conduct at issue.
1. Failure or refusal to follow the written or oral instructions of a supervisor or manager.

12

2. Insubordination (acts that indicate an employee's lack of cooperation or willingness to work).

3. Neglecting job duties, responsibilities and/or procedures.

4. Engaging in unauthorized personal business during work hours.

5. Excessive use of the telephone for personal use.

6. Inappropriate or unacceptable attire

7. Failure to exercise proper safety precautions

8. Falsifying or misrepresenting company or employment records (includes recording of time worked).

9. Discourtesy, hostility, or rudeness in dealing with employees of First Cash, Inc. and/or customers.

10. Theft, abuse or misuse of First Cash, Inc. property, materials, or supplies

11. Threatening, harassing, or inflicting bodily harm to fellow employees and/or customers.

12. Making false and malicious statements concerning First Cash, Inc. employees.

13. Possession, use, purchase, transfer or sale of alcohol beverages, controlled substances or illegal drugs at any time during working hours, on First Cash, Inc. premises, or while representing First Cash, Inc.

14. Disclosure of confidential information.

15. Violating any First Cash, Inc. policy, rule, regulation, or practice.

**Drug Usage.**  Regardless of the degree of tolerance that might be exhibited by any employee, manager or officer of this Company, First Cash, Inc. disapproves of and discourages the use of illegal or controlled substances.  With the objective of maintaining a drug-free work place and an efficient work force, First Cash, Inc. may at any time and for any reason, request any employee to undergo drug testing.  A positive test may constitute grounds for disciplinary action, up to and including termination.  Refusal to comply may be grounds for disciplinary action, up to and including termination.

**Anti-Harassment/Non-Discrimination.**  First Cash, Inc. is committed to maintaining a work environment that is free of discrimination.  In keeping with this commitment, we will not tolerate any form of harassment or unlawful discrimination against our employees by anyone, including supervisors, other employees, vendors, clients, or customers.  All employees are expected to avoid any behavior or conduct that could reasonably be interpreted as unlawful harassment of employees or persons who do business with First Cash, Inc.

Harassment consists of unwelcome conduct, whether verbal, physical, or visual that is based upon a person's protected status, such as sex, color, race, ancestry, religion, national origin, age, disability, veteran status, citizenship status, or other protected group status.  Harassment includes conduct that denigrates or shows hostility or aversion toward an individual because of his or her protected status or that of his or her relatives, friends or associates.

Sexual harassment deserves special mention.  Unwelcome sexual advances, requests for sexual favors, and other physical, verbal, or visual conduct based on sex may constitute

13

sexual harassment. This conduct is unlawful when (1) submission to the conduct is an explicit or implicit term or condition of employment, (2) submission to or rejection of the conduct is used as the basis for an employment decision, (3) the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. Sexual harassment may include such actions as sex-oriented verbal "kidding", "teasing", or jokes. foul or obscene language or gestures, display of foul or obscene printed or visual material, physical contact such a patting, pinching, or brushing against another's body and demands for sexual favors. While such conduct generally can amount to sexual harassment only if it is both unwelcome and either severe or pervasive, First Cash. Inc nonetheless discourages any such conduct in the workplace, regardless of the circumstances.

Everyone at First Cash, Inc. and especially each supervisor is expected to avoid any behavior or conduct that could be interpreted as unlawful harassment. All employees should understand the importance of informing an individual whenever that individual's behavior is unwelcome, offensive, in poor taste, or inappropriate.

If you feel that you have experienced or witnessed discrimination or harassment, you are to notify immediately the Director of Human Resources or your immediate supervisor, who will take steps to ensure that your report is properly investigated There will be no retaliation discrimination or harassment, for cooperating with an investigation of a compliant of discrimination or harassment.

The policy of First Cash, Inc. is to investigate each complaint promptly and to keep complaints and the results of our investigation confidential to the fullest extent practicable.

If an investigation confirms that a violation of this policy has occurred. then appropriate corrective actions, including disciplinary measures will be taken. In investigating complaints of harassment under this policy, the Company may impose discipline for inappropriate conduct without regard to whether the conduct constitutes a violation of the law and even if that conduct does not rise to the level of violation of this policy. The Company will advise interested parties of the outcome of an investigation, although not necessarily all details of the actions the Company has taken to maintain a harassment-free environment.

## SALARY ADMINISTRATION GUIDELINES

**Pay Periods.** Administrative employees receive wages on a bi-weekly basis. Operations employees receive wages accordingly: Associate members receive wages on a bi-weekly basis and may be eligible for monthly sales commissions. Commissions are usually paid the first pay period of the subsequent month. Manager Trainees receives a salary on a bi-weekly basis and may be eligible for monthly sales commissions Commissions are usually paid the first pay period of the subsequent month. Assistant Managers receive a salary on a bi-weekly basis and may be eligible for monthly sales commissions. In addition, assistants will be paid 25% of what the manager is paid for both the monthly

14

commission and the quarterly bonus.  Commissions are usually paid on the second pay period of the subsequent month.  Managers receive a salary on a bi-weekly basis and are paid a monthly commission based on the store's gross profit for the month.  Commissions are usually paid the second pay period of the subsequent month.  Managers may also qualify for quarterly bonuses.

**Performance Reviews.**  To help employees perform their job to the best of their abilities, it is important to receive feedback regarding good performance and to receive appropriate suggestions for improvement when necessary   Consistent with this goal, employee performance will be evaluated on an on-going basis and they will be provided with periodic written evaluations of their performance.

Performance reviews, conducted by the immediate supervisor, will be prepared and discussed at least annually on the anniversary date.

**Salary Reviews.**  All salary raises are subject to the payroll committee approval.  Salary amounts generally will be reviewed on an annual basis.  If an employee is granted a salary increase, it will normally be effective on their anniversary date.  Salary increases are not automatic and may be granted at the Company's discretion.

Operations Employees:  Salary changes may be recommended by the store manager for assistants, manager trainers and associates, which must be authorized by the Area Supervisor.  Area Supervisors may authorize salary changes for managers, assistants, manager trainees or associates.  Regional Vice Presidents may authorize salary changes for Supervisors.

Administrative Employees:  Salary changes may be recommended by the employee's immediate supervisor with any changes being authorized by the next level in the supervisory chain.

The Payroll Committee may 1.) authorize salary changes for Regional Vice Presidents, 2.) authorize salary changes which are considered exceptions, 3.)  over rule any salary recommendation, and 4.)  set annual salary increase guidelines

**Transfers.**  Administrative employees may be required or may request to transfer to another position.

Operations employees may request or be required to transfer to another First Cash location   Managers who are required to transfer may be guaranteed a level of compensation (duration may vary) based on prior six months earnings.

**Demotions**   If after being promoted, an employee's performance does not meet the expectations of the new position, that employee may be demoted, with a decrease in pay, to a position assigned by their manager or supervisor.

15

ADDITIONAL POLICIES/PROCEDURES FOR OPERATIONS EMPLOYEES

16

# OPERATIONS

**Business Hours.** The business hours for our locations are posted at each location. Your manager will inform you of your scheduled hours. Your scheduled hours may vary from the hours we are open to the public.

**Pay Dates.** You are paid on a biweekly schedule. If payday falls on a holiday, you will be paid on the preceeding normal work day. We cannot provide pay advances prior to the regular scheduled payday. No cash draws at store level are allowed. No IOUs or personal checks "on hold" are allowed. Direct Deposit of your paycheck to your personal bank account is available. If interested, you may inquire at the corporate office for more details.

**Severe Weather.** You are expected to be at work on all regularly scheduled business days. When ice, snow, flooding, or other conditions constitute a serious driving hazard, you must notify your supervisor as soon as possible that you will be late or absent. You may choose to use a vacation day if severe weather prohibits you from coming to work. Failure to come to work is otherwise an unpaid day.

**Public Officials.** Any correspondence or inquiry from law enforcement, agents of the Consumer Credit Commissioner or agents of the ATF must be referred to the manager or supervisor.

**General Expectations.** Each pawnbroker in the employ of First Cash, Inc. is expected to always strive to do his job right. This includes proper testing, obtaining proper identification, recording information accurately, pricing and coding accurately, treating customers and their property with respect, courtesy and care, and obtaining the best deal for the Company at all times. *There will be no tolerance for willful or deliberate disregard of the proper way of doing things.*

**Adherence to Law and Policy.** Each employee is expected to be thoroughly acquainted with the laws governing pawnbrokering and with the policies of First Cash, Inc. regarding the required or preferred ways of conducting business within the law.

All employees of First Cash, Inc. must read and understand the laws pertaining to pawnshops in the jurisdiction in which they work. If you have any questions pertaining to laws or regulations in your area, contact your immediate supervisor, then corporate for clarification.

**Complete and Accurate Paperwork.** In addition to obtaining proper identification from each pawn or buy customer and properly testing all incoming merchandise, we are responsible for communicating all the correct information to the appropriate parties and making sure that product descriptions are clear and complete. That means being careful, being thorough, and checking your work. It also means being sure that you write not only what you see but also what you do not see in cases where a standard component or piece of information is missing. Every time you save or sign a transaction, you take

responsibility for all information on the sheets and in the computer   That includes the information you entered.   It also includes any information previously entered by any other employee that you had the opportunity to review.   Errors you can correct must be corrected, errors you cannot correct must be reported to the manager.

**Important Consideration.**   Some mistakes can be corrected, some can be overcome by excellence in the rest of our work.   But some mistakes simply must not occur.   Examples are: *Breaking the Law.   Don't.*

*Mishandling police-holds.*   Merchandise that has been held by the police can never be released to the customer, or sold, unless and until we receive permission from the police to do so.   No margin of error is tolerable and no excuse is acceptable.

*Losing a customer's merchandise.*   It is absolutely essential that our customers recognize us and are able to rely upon us as a safe repository for their valuable property. Unfortunately, various errors can lead to losing a customer's merchandise; it can be so badly mis-shelved or mis-labeled that we cannot find it; it can accidentally be pulled; an interest payment can be misapplied to the wrong ticket; the wrong merchandise can be given out on a pickup; or, a special hold can be handled wrong.   None of these errors should occur if we pay attention to what we are doing, follow the rules of our business, and finish each transaction before starting a new one.   No matter how unintentional the error, mistakes that lead to losing a customer's property cannot be tolerated and may result in termination or other action.

**Safety with Firearms.**   The handling of firearms in our industry is performed on a daily basis.   All associates of First Cash Inc. should be properly trained and tested in this area by store management before they are allowed to touch a firearm.   Every store manager should be confident of an associate's ability with firearms before allowing them this privilege.   A gun in the hands of an inexperienced person can be deadly.

No associate of First Cash, Inc. may carry a firearm of any kind on their person during business hours for any reason.

**Outside Activities.**   Employees are encouraged to recommend to management avenues through which to market the products we have for sale.   This can include bringing customers or dealers into the stores as well as taking merchandise to prospective buyers. Such activities are considered a part of the job.   Employees may not earn independent commissions or profits on items either purchased from or taken from the stores. Unpurchased merchandise, or payment or receipt for it, must be returned to the store of origin as quickly as practicable.   Any employee who removes merchandise from a store is responsible for that merchandise until it, or the payment or receipt for it, are returned to the store and properly logged in.   Remember, no merchandise may be taken to a prospective purchaser without a manager's approval and a complete and proper write-up.

# PRODUCT KNOWLEDGE

Pawn shop employees probably encounter a broader range of products than workers in any other profession. To be proficient at their jobs, employees must acquire a hands-on, working knowledge of all the many types of merchandise encountered and dealt with in our stores. This knowledge should encompass pricing (new and used), function or construction, and testing procedures. Since our success depends upon the decisions we make about these products, we truly must be the jack of all trades and the master of most.

**Just Be Right.** Making difficult judgment calls comes with the territory When taking in merchandise, judging a customer, placing a value on items, and the rest of the many decisions we must make, you are expected to make the best decision for the Company. Sometimes this means taking a gamble. Taking that gamble is part of what distinguishes a good, creative pawnbroker from a simple ticket-writer. Your decision-making will be judged by the outcome of each deal, so be sure you have good reasons for every decision you make.

**Setting the Proper Value.** Your job is to ensure that each item you take in is worth the loan you give or the purchase price you pay. Correctly evaluating the merchandise you take in is one of the most basic aspects of this job.

**Resources.** First Cash, Inc. provides reference materials, pricing and testing guides, individual and group instruction, as well as access to knowledgeable and experienced personnel, all in an effort to develop and enhance each employee's skills and productivity. Employees are expected to take advantage of these resources and are urged to contribute to the acquisition of reference materials and the development of contacts, procedures and materials conducive to the effective assessment of merchandise brought into our stores. Employees are encouraged and expected to actively seek to broaden and strengthen their knowledge about the products we encounter. It is especially important that we share the skills we acquire and not merely rely on those who have already developed proficiency in the testing and evaluation of a product line

**Testing.** Setting the proper value for a transaction begins with proper testing. Regardless of any other factors that may affect the decision to take in merchandise, each deal ultimately stands or falls on the value of that merchandise. When testing jewelry, it is your job to insure that the jewelry you take in is genuine. Toward this end, all employees are instructed in the proper ways to test and evaluate jewelry. All are alerted to the most frequently encountered marks or indications of precious metal content or lack thereof. If you feel you need more assistance in correctly evaluating jewelry, ask-as often as necessary-until you are confident of your own skills.

**Market Development – Pawns and Buys.** Employees are encouraged to be open and flexible in their decisions to pawn or buy new or previously marginal products. Do not automatically reject anything. Think about how previously undesirable or marginal

products may be developed into profitable resale lines. Nearly anything can be pawned if the price is right and you are creative enough to see a market.

**Recognition of Possible Stolen Items.** Acceptance of uniquely marked goods. A pawnbroker must not accept in pawn any item that is marked in a manner that indicates ownership by a rental company, motel, training school, construction company, governmental body, or any other person or firm other than the person offering the item to the pawnbroker, unless the pledgor produces a valid receipt or other evidence of ownership of the item, which must be attached to and retained with the goods while pledged.

First Cash, Inc. takes a strong position concerning stolen items. The acceptance of known stolen items is strictly against Company policy.

*Here are a few key procedures for the detection of items possibly stolen.*

- Always ask for the customer's identification.
- Make sure identification picture matches the customer.
- Does the customer appear nervous or acting unusual?
- Is the merchandise new or in the original box?
- Does the customer have any past police holds or confiscations listed in the computer?
- Make sure all items requiring serial numbers have the numbers visible without any type of alterations.
- Is there an unusual amount of like items associated with this customer?
  (**Example:** Has customer brought in two or more VCRs, watches, musical instruments, etc.?)
- Look for any stampings or markings that do not go with this customer.
- Have the customer test the item to show you how it works.
- Ask questions the customer should know about the item.

If these steps are followed, the possibilities of stolen merchandise coming in our stores should be minimal.

## CUSTOMER AND COMMUNITY RELATIONS

First Cash, Inc. is a customer-oriented organization. Within reason, the "*customer is always right.*"

**Treat the Customer Right.** There is never an excuse for raising your voice to a customer, using bad language in front of a customer, calling or implying that a customer is a liar or a thief, or in any other way offending a customer. If you perceive that a situation may be getting out of hand, excuse yourself, walk away, and call in a manager immediately. Arguments with customers will not be tolerated.

Some of our best customers started out having strained relations with us, so do not give up on a customer. Work it out or turn him over to another employee.

**First Impressions.** Most new customers are uncertain of our procedures and the terms we use in our business. They are likely to have a negative opinion of how pawn shops work-possibly from a bad experience with another pawn shop. And, remember, most need money-which means they may be under stress. It is our job to welcome and reassure these newcomers and to win them as customers for First Cash, Inc.. Be courteous, patient and helpful.

**Customers Have Names.** Regular customers like and deserve to be recognized. When you are aware that a customer has been in before, try to use his name in your conversations with him. That will help you remember it the next time. It will also help your co-workers, who may be trying to remember the person's name  More important, it will reinforce the customer's feeling that this is his pawn shop.

**Making Tomorrow's Deal.** Do not be too quick to turn down a deal. Avoid insulting a customer's merchandise or rejecting a deal in harsh or uncompromising terms. Reassure customers that we can get them the loan they need if they bring us the right merchandise, or additional merchandise.

**Propriety.** Every day, both at work and off, you make decisions that affect the way you are viewed by others. As an employee of First Cash, Inc. be especially aware that what you do and how you act also reflects on all your co-workers. Be careful. Be honest. The rest will follow.

**Be Truthful.** There is never any reason to lie to a customer. While it is always appropriate to emphasize the good features of merchandise we are selling and to provide persuasive opinions or information, never deliberately lie to a customer. The same holds true when we explain the terms or a pawn or buy, now we handle a customers property, or any other topic. There are times when a closed mouth is preferable to saying too much, but there is never an excuse for dishonesty.

**Answering Phones.** The Company-approved way to answer the phone is: "First Cash, your cash headquarters", this is <your name>, how may I help you?" Use it. Phone calls should be handled politely and professionally. We pay for the Yellow Pages, newspaper ads, and special marketing campaigns to attract new customers. We know we are the best. Make sure they know it, too-the first and every time they call.

<u>CHECKS AND CHARGE SALES</u>

First Cash, Inc. has established procedures that must be followed when accepting a customer check or charge card.

**Checks**
1. Every check must be approved by Equifax. You may have situations where you have done business with an individual for many years, you don't run their checks through Equifax because you know the person and you think the check is good, right? WRONG!! Run EVERY CHECK THROUGH EQUIFAX.

2. The current date and the check date must be the same. You can not accept starter checks. The check writer's name must be commercially imprinted on the face of the check. The amount in words and figures must agree, and the check writer must initial any changes made to the check.

3. If you enter the check and receive a "Call Auth Center" response, please call the Equifax authorization center at 1-800-533-4909.

4. Write on the face of each check·

<u>State of Drivers License | Drivers License Number | Store #</u>
Birthdate      |      Equifax Approval Code |   Initials

5. Stamp the back of the check with your deposit stamp before you take it to the bank.

## Credit Cards

1. Swipe the credit card. Next, enter the last four digits of the account number and the dollar amount of the sale  Have the customer sign the receipt. Give the customer the yellow copy of the receipt and put the white copy with your daily paperwork to be sent to corporate.

2. If the sale is $500 or greater, you must also take a manual imprint of the card. Have the customer sign the manual imprinted sales slip and send it with your daily paperwork to corporate.

3. If you are unable to swipe the card, press the manual sale key and enter the card holder's account number. If you are instructed to "Call Voice Auth Center," call 1-800-452-8272 for a voice authorization number.

4. *Never* take instruction from a customer on how to enter a sale. *Never* take an authorization number from a customer. Be aware of credit card fraud. If someone is trying to rush you through a transaction, it could indicate fraud. If you don't "feel right" about the transaction, fraud is possibly involved and you should immediately notify the store manager. It is better to refuse a fraudulent sale than to let the merchandise walk out of the store and be hit with a credit card chargeback the next week.

5. Any credit card receipt that prints out with the phrase "Please Imprint Card" at the bottom must be imprinted regardless of the dollar amount.

Credit card sales $500 or greater that were not manually imprinted and returned checks that were not authorized by Equifax will be used in calculating your commissions. Remember, failure to comply with these procedures is unacceptable and will not be tolerated.


## EMPLOYEE PURCHASES AND LAYAWAYS ·

Merchandise for sale at stores other than an employees primary work location is available for purchase or layaway by store employees. Employee purchases and layaways should be handled by a store manager. Employees should expect to pay the equivalent of a customer price. The minimum down payment and rate of payment on layaways will be the same as for regular customers. The rate of payment may be increased to achieve a quicker payoff. Employees are responsible for making sure that payments are kept

current. No merchandise may be removed from store until full payment is rendered. Supervisors may not purchase from or pawn to any stores they are responsible for under any circumstances. Supervisors may purchase from other stores under the same terms as store employees. As in all other cases, store managers will be held responsible for the profitability and propriety for all transactions.

**Exchanging Merchandise.** Exchanges or returns are permitted only under the same terms as those that apply to regular customers.

## EMPLOYEE CHECK CASHING

Employees may not cash payroll checks received from First Cash, Inc. at our stores. Otherwise, First Cash, Inc., at a manager's discretion, may provide the service of permitting employees to cash checks for moderate amounts (up to $50) to meet their needs. Checks cashed should be deposited with the next store bank deposit.

**Restrictions and Conditions.** No employee may write a check to First Cash, Inc. that cannot be cashed immediately (no floating or holding checks is permitted). Employees may not bounce checks. If an employee check bounces, First Cash, Inc. must be immediately reimbursed for the check and fee (currently $20). **An employee's failure to promptly reimburse First Cash, Inc. for the bounced check and fee will be subject to discipline, up to and including termination. Employees may not cash third-party checks.**

# First Cash Pawn will not purchase, accept in pawn or otherwise acquire any item on which the serial number has been defaced, altered or removed.

24

# *ACKNOWLEDGEMENT*

*I hereby acknowledge that I have received all First Cash, Inc. policies and will abide by them. I understand that these policies are not a contract of employment and that I am employed on an at-will basis. I am free to terminate my employment at any time for any reason; First Cash, Inc. is also free to terminate my employment at any time and for any reason.*

_____

*Printed Signature*


_____          _____

*Signature*                                          *Date*


*Please complete and return this form to your immediate supervisor as soon as possible.*

## ACKNOWLEDGMENT TO THE ASSOCIATE HANDBOOK

My signature signifies that I have read (or had read to me) and understand First Cash, Inc.'s Associate Handbook. I agree to abide by these guidelines and policies.

SIGNATURE _____ *Crespo* _____

NAME (PRINTED) ___ Deyanira Crespo ___

DATE ___ Dec 27, 1994. ___

SOCIAL SECURITY NUMBER ___ 449 - 77 7318. ___

**EXHIBIT**

"B"

# ACKNOWLEDGEMENT

*I hereby acknowledge that I have received all First Cash, Inc. policies and will abide by them. I understand that these policies are not a contract of employment and that I am employed on an at-will basis. I am free to terminate my employment at any time for any reason; First Cash, Inc. is also free to terminate my employment at any time and for any reason.*

DEYANIRA CRESPO
_____
*Printed Signature*

CRESPO                                              9/24/98
_____                      _____
*Signature*                                        *Date*

*Please complete and return this form to your immediate supervisor as soon as possible.*



**EXHIBIT**

"C"

Revised: September 15 1998

CAUSE NO. 2001-CCL-00524-B

| | | |
|---|---|---|
| DEYANIRA CRESPO, | * | IN THE COUNTY COURT |
| | * | |
| VS. | * | AT LAW NO. TWO |
| | * | |
| FIRST CASH | * | |
| FINANCIAL SERVICES INC, | * | |
| F/K/A FIRST CASH INC., | * | CAMERON COUNTY, TEXAS |

## ORDER SETTING HEARING ON DEFENDANT'S VERIFIED MOTION TO ABATE

It is hereby ORDERED that Defendant's Verified Motion to Abate is set for hearing by the Court on the _____ day of _____, 2001 at _____.m.

_____
JUDGE PRESIDING

CAUSE NO. 2001-CCL-00524-B

| | | |
|---|---|---|
| DEYANIRA CRESPO, | * | IN THE COUNTY COURT |
| | * | |
| VS. | * | AT LAW NO. TWO |
| | * | |
| FIRST CASH | * | |
| FINANCIAL SERVICES INC, | * | |
| F/K/A FIRST CASH INC., | * | CAMERON COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT'S VERIFIED MOTION TO ABATE

On _____, 2001, the Court considered Defendant's Verified Motion to Abate the above-referenced matter. Having reviewed the Motion on file herein, is of the opinion that the same should be GRANTED.

It is therefore, ORDERED, ADJUDGED AND DECREED that Defendant's Verified Motion to Abate is GRANTED.

Entered this _____ day of _____, 2001.

_____

JUDGE PRESIDING

025                          Before The
                        COUNTY COURT AT LAW
                      CAMERON COUNTY - No. 1
                        Brownsville, Texas

DEYANIRA CRESPO,                    §
                                    §
          Plaintiff,                §
                                    §
Vs.                                 §
                                    §    Cause No. 2001-CCL-00524-A
                                    §
FIRST CASH                          §
  FINANCIAL SERVICES INC,           §
f/k/a FIRST CASH INC.,              §
A Delaware Corporation;  and        §
FULANO DOE,                         §
A Resident of the                   §
State of Texas,                     §
                                    §
          Defendants.               §

------------------------------------------------------------------

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
### *DEFENDANT'S VERIFIED MOTION TO ABATE*

------------------------------------------------------------------

### I    INTRODUCTION

1.    COMES NOW PLAINTIFF DEYANIRA CRESPO and files this
response in opposition to *DEFENDANT'S VERIFIED MOTION TO ABATE*,
filed herein on October 25, 2001, and set for hearing Thursday,
December 6, 2001, 9:00 a.m.  Plaintiff submits for the court's
consideration such matters at stated herein.  The relevant
provisions of the defendant's handbook were attached as Exhibit D
to plaintiff's petition, and is also here attached as the same.

## IV    ARGUMENT AND AUTHORITIES

5.    The defendant correctly asserts in its motion to abate that "the Federal Arbitration Act applies in state courts, and preempts state anti-arbitration laws to the contrary." *Defendant's Verified Motion to Abate* § II [citing *Circuit City Stores v. Adams,* 121 S.Ct. 1302 (2001)]. Defendant further states "that the FAA applies to all contracts of employment." *Id.* This is almost, but not quite, a correct statement of the law.

6.    The Federal Arbitration Act *can* apply to any and "all contracts of employment," *if*, and *only if*, the contract providing for arbitration so states. The employee handbook provision defendant relies on is silent as to whether the state or federal arbitration acts apply (Exhibit D, p.3). The question of which act applies is a fact question for the finder of fact. However, the question at issue here is whether the provision in the employee handbook actually constitutes a contract.

7.    The Thirteen Court of Appeals recently addressed the issue now before this court, holding that

> A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement.

*J.M. Davidson, Inc. v. Webster*, 29 S.W.3d 507, 511 (Tex. App.—Corpus Christi 2001, no pet. h.). See also *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999)(*per curiam*); In re *H.E. Butt Grocery Co.*, 17 S.W.3d 360, 366-67 (Tex. App.—Houston

employer for retaliatory firing after he filed a worker's compensation claim. *Id.* at 511. Davidson filed a motion to compel arbitration on the basis of an Alternative Dispute Resolution Policy that Webster signed as part of his employment agreement. *Id.* The agreement stated in part:

> I . . . agree and contract that any and all claims, disputes or controversies . . . shall be exclusively and finally settled by binding arbitration. . . . I understand that . . . such employment will be 'at-will' . . . The 'Company' can change or otherwise modify any employment agreement. The 'Company' reserves the right to unilaterally abolish or modify any personnel policy without prior notice.

*Id.* at 509. The court here found that the arbitration agreement was not a binding contract. *Id.* at 514.

11. There were several problems with the agreement in the *Davidson* case. The unilateral handbook provision upon which defendant relies raises the same issues at the bilateral "agreement" in *Davidson*. First, the Thirteenth Court of Appeals held that the agreement was not binding on both parties. *Id.* This was true because

> [a]lthough Davidson agreed to submit 'any and all claims, disputes or controversies' arising between it and appellee to arbitration, it explicitly retained the absolute right to modify or terminate the policy at any time."

*Id.* Further, the contract was not valid because no consideration was given by the employer for the arbitration agreement. *Id.* When

such a promise is illusory.

Id. (citing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644-45 (Tex. 1994). Because the employment agreement stated that Cooper, like plaintiff Deyanira Crespo, was an at-will employee, his continued employment by Tenet did not constitute consideration. *Id.*

14. Additionally, the court noted that the arbitration agreement could not be binding because it only bound one party – Cooper. *Id.* Defendant's employee handbook provision presents the same issue. The employee handbook states "All *employee* complaints or grievances ...." [emphasis added]. The provision is silent regarding grievances or complaints which the employer may have against the employee. The language in the agreement, like defendant's handbook (Exhibit D, p. 2) also specifically stated "the employer reserved the right to amend or rescind any provisions of the handbook 'as it deemed appropriate' within its sole discretion." *Id.*

15. The court rejected two federal circuit court opinions as authority because in this case, "there was no mutuality of obligation," and "the language from the handbook, including the acknowledgment form, expressly denied that [the employer] was bound by the policies set out in that document." *Id.* at 389 (rejecting *O'Neil v. Hilton Head Hosp.*, 115 F3d 272 (4th Cir. 1997) and *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997)

and at any time (Exhibit D., p. 2). Further, a plain reading of the language of the arbitration section of the agreement states only that "employee complaints or grievances" will be subject to arbitration. The agreement makes no mention of claims by the employer against the employee being subject to arbitration.

## V   CONCLUSION

18. The company in writing has stated that the employee handbook is not a contract. The provision for arbitration is in the employee handbook. Therefore, there is no contract between the parties pursuant to which the court can order arbitration.

## VI   PRAYER FOR RELIEF

19. WHEREFORE, plaintiff prays the court deny defendant's motion, declare that the employee handbook is not a contract, declare that the provision for arbitration in the employee handbook is not a contract, and order such other and further relief as is proper and just.

# First Cash, Inc.
# Employee
# Manual

EXHIBIT

D

D-I

Revised - September 15, 1998

## WELCOME TO FIRST CASH, INC.

*Congratulations on your decision to join First Cash, Inc. To answer the questions you may have concerning the Company's policies, procedures, and benefits, we are providing you with this Employee Policy Manual. Please read it thoroughly and retain it for future reference. Should you have any questions regarding our policies, please ask your manager or supervisor.*

*Significant care has been taken in the development of these policies; however, policy refinement is an on-going process and you may receive updated information from time-to-time concerning changes to these policies. These should always be filed in a timely manner to insure that your manual is up-to-date.*

*We hope that your employment relationship with First Cash, Inc. will be a rewarding experience and mutually beneficial for both parties. Again, welcome aboard, and the best of success in your new position at First Cash, Inc.!*

**THIS MANUAL DOES NOT CONSTITUE A CONTRACT BETWEEN FIRST CASH, INC. AND ITS EMPLOYEES. FIRST CASH, INC. RESERVES THE RIGHT TO AMEND THE MANUAL AT ANY TIME WITH OR WITHOUT NOTICE.**

D - 2

**Outside Employment.** Employment outside of the Company must be approved in advance by the employee's supervisor. Outside employment should never interfere with the employee's best performance at First Cash, Inc. and should never result in a conflict of interest such as working for a competitor of the Company.

**Full Time Employment.** To qualify as a full-time employee and to be eligible to receive the benefits to employees with full-time status, an employee must, on a regular basis, work at least a 40-hour week. The actual number of hours worked per day or days worked per week may vary depending upon the job or store location to which the employee is assigned.

**Conflicts of Interest.** Outside employment or any other business-related activity with a direct or potential competitor of First Cash, Inc is prohibited. Employees who work for or who provide or sell proprietary information to such a competitor or potential competitor may, at the discretion of management, be subject to immediate dismissal or other action. When you inform the competition about any aspect of our business, you may undermine job security for yourself and your co-workers, as well as risk criminal prosecution.

**Information.** Employees of First Cash, Inc. are expected to keep the Company informed of any changes, e.g., place of residence or telephone number, so that these records will always be complete and up to date.

**Problem Resolution.** Management will attempt to review and resolve your job-related problems in a prompt and equitable manner. Employees are encouraged to present all such problems to their immediate supervisor and/or the Human Resources Department. If a problem persists, employees then must contact the Human Resources Department to proceed to the arbitration process listed below.

**Arbitration of claims and disputes.** All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, Inc.) shall be settled, final and binding by arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

**Attendance.** Employees are expected to report to work whenever scheduled and be at their work location at their starting time and again after their lunch break at the prescribed time. Failure to observe working hours reduces productivity and places an unfair burden on fellow employees.

Whenever an employee is unable to report to work because of illness or emergency, the employee must call his/her supervisor as far in advance as possible prior to his/her scheduled starting time, or in the case of emergency, as soon as practicable. If the supervisor is unavailable, the employee should notify another person in the supervisory chain (i.e. if the manager is not available, talk to the assistant manager).

D-3

Before The
COUNTY COURT AT LAW
CAMERON COUNTY - No. 1
Brownsville, Texas

| | | |
|---|---|---|
| DEYANIRA CRESPO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| Vs. | § | |
| | § | Cause No. 2001-CCL-00524-A |
| | § | |
| FIRST CASH | § | |
| FINANCIAL SERVICES INC, | § | |
| f/k/a FIRST CASH INC., | § | |
| A Delaware Corporation; and | § | |
| FULANO DOE, | § | |
| A Resident of the | § | |
| State of Texas, | § | |
| | § | |
| Defendants. | § | |

-------------------------------------------------------------------

O R D E R / ON:
*DEFENDANT'S VERIFIED MOTION TO ABATE*
-------------------------------------------------------------------

1.    On December 6, 2001, at or about 9:00 a.m. this case came on for hearing before the court on *DEFENDANT'S VERIFIED MOTION TO ABATE*. Having considered the motion, the fact, the law, and heard the argument of counsel, the court is of the opinion that the motion should be, and hereby is, DENIED. Accordingly, such relief is ORDERED as is stated below.

2.    Further, the court finds and DECLARES that the defendant's employee handbook is not a contract.

NOTICE OF ORAL DEPOSITION OF JAN HARTZ,
DEFENDANT'S HUMAN RESOURCES DIRECTOR                                    1

# First Cash, Inc.
# Employee
# Manual

EXHIBIT

D

D-1

Revised  September 15 1998

**Outside Employment.** Employment outside of the Company must be approved in advance by the employee's supervisor. Outside employment should never interfere with the employee's best performance at First Cash, Inc and should never result in a conflict of interest such as working for a competitor of the Company

**Full Time Employment.** To qualify as a full-time employee and to be eligible to receive the benefits to employees with full-time status, an employee must, on a regular basis, work at least a 40-hour week. The actual number of hours worked per day or days worked per week may vary depending upon the job or store location to which the employee is assigned

**Conflicts of Interest.** Outside employment or any other business-related activity with a direct or potential competitor of First Cash, Inc is prohibited. Employees who work for or who provide or sell proprietary information to such a competitor or potential competitor may, at the discretion of management, be subject to immediate dismissal or other action. When you inform the competition about any aspect of our business, you may undermine job security for yourself and your co-workers, as well as risk criminal prosecution.

**Information.** Employees of First Cash, Inc are expected to keep the Company informed of any changes, e g , place of residence or telephone number, so that these records will always be complete and up to date.

**Problem Resolution.** Management will attempt to review and resolve your job-related problems in a prompt and equitable manner. Employees are encouraged to present all such problems to their immediate supervisor and/or the Human Resources Department. If a problem persists, employees then must contact the Human Resources Department to proceed to the arbitration process listed below.

**Arbitration of claims and disputes.** All employee complaints or grievances (all claims, disputes, controversies, differences or other matters in question arising out of the employment relationship between the employee and First Cash, Inc ) shall be settled, final and binding by arbitration (a third, neutral party) in Tarrant County, Texas, in accordance with the Rules of the American Arbitration Association.

**Attendance.** Employees are expected to report to work whenever scheduled and be at their work location at their starting time and again after their lunch break at the prescribed time. Failure to observe working hours reduces productivity and places an unfair burden on fellow employees

Whenever an employee is unable to report to work because of illness or emergency, the employee must call his/her supervisor as far in advance as possible prior to his/her scheduled starting time, or in the case of emergency, as soon as practicable. If the supervisor is unavailable, the employee should notify another person in the supervisory chain (i.e if the manager is not available, talk to the assistant manager)

CAUSE NO. 2001-CCL-00524-A̶B̶

|  |  |
|---|---|
| | * |
| DEYANIRA CRESPO, | * |
| | * |
| VS. | * |
| | * |
| | * |
| FIRST CASH | * |
| FINANCIAL SERVICES INC, | * |
| F/K/A FIRST CASH INC., | * |

IN THE COUNTY COURT

AT LAW NO. TWO

CAMERON COUNTY, TEXAS

ORDER GRANTING Denying DEFENDANT'S VERIFIED MOTION TO ABATE

On Dec 19 , 2001, the Court considered Defendant's Verified

Motion to Abate the above-referenced matter. Having reviewed the Motion on file

herein, is of the opinion that the same should be ~~GRANTED~~. Denied.

It is therefore, ORDERED, ADJUDGED AND DECREED that Defendant's

Verified Motion to Abate is ~~GRANTED~~. Denied.

Entered this 19 day of December 2001.

_____
JUDGE PRESIDING

12/26/01
DAVID HORTON
TERI DANISH
JGR/LC

## CAUSE NO. 2001-CCL-00524-B

| | | |
|---|---|---|
| DEYANIRA CRESPO, | * | IN THE COUNTY COURT |
| | * | |
| VS. | * | AT LAW NO. ONE |
| | * | |
| FIRST CASH FINANCIAL SERVICES | * | |
| INC, f/k/a FIRST CASH INC., A | * | |
| Delaware Corporation; and FULANO | * | |
| DOE, A Resident of the State of Texas | * | CAMERON COUNTY, TEXAS |

## NOTICE TO THE DISTRICT CLERK OF FILING
## OF NOTICE OF REMOVAL

TO:   HONORABLE JOE RIVERA
      County Clerk, Cameron County
      Cameron County Courthouse
      974 East Harrison
      Brownsville, Texas 78520

You will please take notice that Defendant First Cash Financial Services, Inc. f/k/a First Cash Inc. has filed in the United States District Court for the Southern District of Texas, Brownsville Division, a notice of removal of the cause styled: <u>Deynaira Crespo v. First Cash Financial Services, Inc. f/k/a First Cash Inc., A Delaware Corporation; and Fulano Doe, A Resident of the State of Texas,</u> originally filed in the County Court at Law No. One of Cameron County, Texas, Cause Number 2001-CCL-00524-B, to the United States District Court for the Southern District of Texas, Brownsville Division, and that a true and correct copy of said Notice of Removal is being filed with the Clerk of the County Court at Law No. One to thereby effect a removal to said District Court of the United States, and that the State Court shall proceed no further, unless the cause is remanded. A copy of said notice of removal is attached to this notice.

WITNESS the signature of Defendant, through their attorney, on this the _____ day of March, 2002.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By _____
     Teri L. Danish
State Bar No. 05375320
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FIRST CASH FINANCIAL SERVICES INC,

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Notice to District Clerk of Filing of Notice of Removal was served upon all counsel of record, to-wit:

> Dennis Sanchez
> Sanchez, Whittington, Janis & Zabarte, L.L.P.
> 100 North Expressway
> Brownsville, Texas 78521-2284
> Attorneys for Plaintiff Deyanira Crespo
>
> David Horton
> Neel & Horton, L.L.P.
> Post Office Box 2159
> South Padre Island, Texas 78597
> Attorneys for Plaintiff Deyanira Crespo

by certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant to the Texas Rules of Civil Procedure, on this the ____ day of March, 2002.

_____
     Teri L. Danish

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEYANIRA CRESPO,                        *
                                        *
VS.                                     *        CIVIL ACTION NO. __B-02-046__
                                        *
FIRST CASH FINANCIAL SERVICES           *
INC, f/k/a FIRST CASH INC., A           *
Delaware Corporation; and FULANO        *
DOE, A Resident of the State of Texas   *

## NOTICE TO THE PLAINTIFF OF FILING
## OF NOTICE OF REMOVAL

TO:    DEYNAIRA CRESPO, Plaintiff, and her attorneys:

       Dennis Sanchez
       Sanchez, Whittington, Janis & Zabarte, L.L.P.
       100 North Expressway
       Brownsville, Texas 78521-2284

       David Horton
       Neel & Horton, L.L.P.
       Post Office Box 2159
       South Padre Island, Texas 78597

       PURSUANT to Title 28 U.S.C., Section 1446(d), as amended, you are hereby

notified that on the 7th day of March, 2002, in the above styled and numbered cause

(being Cause Number 2001-CCL-00524-A in the County Court at Law No. One of

Cameron County, Texas), FIRST CASH FINANCIAL SERVICES INC filed its Notice of

Removal in the United States District Court for the Southern District of Texas,

Brownsville Division. Copies of such Notice and other papers so filed are attached

hereto.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
Teri L. Danish
Attorney-in-Charge
State Bar No. 05375320
Federal Admissions No. 12862
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

ATTORNEYS FOR DEFENDANT,
FIRST CASH FINANCIAL SERVICES INC,

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEYANIRA CRESPO,                          *
                                          *      **B-02-046**
VS.                                       *      CIVIL ACTION NO. _____
                                          *
FIRST CASH FINANCIAL SERVICES             *
INC, f/k/a FIRST CASH INC., A             *
Delaware Corporation; and FULANO          *
DOE, A Resident of the State of Texas     *

## INDEX OF DOCUMENTS FILED

1.    Civil Cover Sheet

2.    Notice of Removal with following attachments:

      a.    State Court's Docket Sheet
      b.    Plaintiff's Petition
      c.    Citation served on First Cash Financial Services, Inc.
      d.    Defendant First Cash Financial Services Original Answer, Verified Plea ,
          and Jury Demand
      e.    Defendant's Verified Motion To Abate
      f.    Plaintiff's Response In Opposition to Defendant's Verified to Abate
      g.    Order Setting Hearing On Defendant's Verified Motion to Abate
      h.    Order Denying Defendant's Verified Motion to Abate

3.    Notice to Plaintiff of Filing of Notice of Removal

4.    Notice to District Clerk of Filing of Notice of Removal

5.    Index of Attorneys

6.    Index of Documents Filed

7.    Order for Conference and Disclosure of Interested Parties

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEYANIRA CRESPO,                        *
                                        *          **B-02-046**
VS.                                     *      CIVIL ACTION NO. _____
                                        *
FIRST CASH FINANCIAL SERVICES           *
INC, f/k/a FIRST CASH INC., A           *
Delaware Corporation; and FULANO        *
DOE, A Resident of the State of Texas   *

## INDEX OF ATTORNEYS

1.  Dennis Sanchez
    State Bar No. 17569600
    Federal Admissions No. unknown
    SANCHEZ, WHITTINGTON, JANIS & ZABARTE, L.L.P.
    100 North Expressway
    Brownsville, Texas 78521-2284
    (956) 546-3731
    Fax (956) 546-3765
    Attorneys for Plaintiff

2.  David Horton
    State Bar No. 10014500
    Federal Admissions No. unknown
    NEEL & HORTON, L.L.P.
    Post Office Box 2159
    South Padre Island, Texas 78597
    (956) 761-6644
    Fax (956) 761-7424
    Attorneys for Plaintiff

3.  Teri L. Danish
    State Bar No. 05375320
    Federal Admissions No. 12862
    RODRIGUEZ, COLVIN & CHANEY, L.L.P.
    Post Office Box 2155
    Brownsville, Texas 78522
    (956) 542-7441
    Fax (956) 541-2170
    Attorneys for Defendant First Cash Financial Services, Inc.

United States District Court
Southern District of Texas
RECEIVED

APR 23 2002

Michael N. Milby, Clerk of Court

041
Before The
COUNTY COURT AT LAW
CAMERON COUNTY - No. 1
Brownsville, Texas

DEYANIRA CRESPO,                    §
                                    §
            Plaintiff,              §
                                    §
Vs.                                 §
                                    §     Cause No. 2001-CCL-00524-A
                                    §
                                    §     C A B-02-46
FIRST CASH                          §
   FINANCIAL SERVICES INC,          §
f/k/a FIRST CASH INC.,              §
A Delaware Corporation;  and        §
FULANO DOE,                         §
A Resident of the                   §
State of Texas,                     §
                                    §
            Defendants.             §

----------------------------------------------------------------

### PLAINTIFFS' RESPONSE TO
*DEFENDANT'S FIRST REQUEST FOR DISCLOSURE TO PLAINTIFF*

----------------------------------------------------------------


I    INTRODUCTION


1.    COME NOW PLAINTIFF DEYANIRA CRESPO, and, pursuant to Rule

194 of the Texas Rules of Civil Procedure, file this response to

*DEFENDANT'S REQUEST FOR DISCLOSURE TO PLAINTIFFS*, served by first

class mail on January 7, 2002, and received by plaintiff January

11, 2002.  By agreement the response date is Monday, February 18,

2002.



EXHIBIT
A

United States District Court
Southern District of Texas
RECEIVED

APR 2 3 2002

Michael N. Milby, Clerk of Court

041                          Before The
                      COUNTY COURT AT LAW
                      CAMERON COUNTY - No. 1
                        Brownsville, Texas

DEYANIRA CRESPO,                    §
                                    §
        Plaintiff,                  §
                                    §
Vs.                                 §
                                    §      Cause No. 2001-CCL-00524-A
                                    §
                                    §      CAB-02-46
FIRST CASH                          §
  FINANCIAL SERVICES INC,           §
f/k/a FIRST CASH INC.,              §
A Delaware Corporation;  and        §
FULANO DOE,                         §
A Resident of the                   §
State of Texas,                     §
                                    §
        Defendants.                 §

----------------------------------------------------------------
            **PLAINTIFFS' RESPONSE TO**
    *DEFENDANT'S FIRST REQUEST FOR DISCLOSURE TO PLAINTIFF*
----------------------------------------------------------------


                    I    INTRODUCTION


        1.    COME NOW PLAINTIFF DEYANIRA CRESPO, and, pursuant to Rule

194 of the Texas Rules of Civil Procedure, file this response to

*DEFENDANT'S REQUEST FOR DISCLOSURE TO PLAINTIFFS*, served by first

class mail on January 7, 2002, and received by plaintiff January

11, 2002.  By agreement the response date is Monday, February 18,

2002.



PLAINTIFFS' RESPONSE TO
*DEFENDANT'S FIRST REQUEST FOR DISCLOSURE TO PLAINTIFF*
                                                              1

## II    RESPONSES

2.    **Rule 194.2(a), "the correct names of the parties to the lawsuit"**: Plaintiff's correct name is "Deyanira Crespo." It is plaintiffs' best information and belief that defendant's correct name is as it appears in the style of this case.

3.    **Rule 194.2(b), "the name, address, and telephone number of any potential parties"**: At this time plaintiffs are not aware of potential parties.

4.    **Rule 194.2(c), "the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial"**:

### A.    <u>Plaintiff's Claims</u>

5.    Plaintiff's claims, causes of action, and requests for equitable relief are stated in plaintiffs' petition. In relevant part, the petition is shown below.

### V    STATEMENT OF THE CASE

#### A.    Facts and Allegations

9.    The defendant company owns and operates pawn shops in various states throughout the United States. Plaintiff began work with the company on or about December 27, 1994, as an auditor. Approximately two years later plaintiff was promoted to audit supervisor.

10.    Defendant Fulano Doe, a manager, had direct management authority over plaintiff. During times relevant the manager would use sexually explicit and suggestive language in talking to plaintiff.

PLAINTIFFS' RESPONSE TO
*DEFENDANT'S FIRST REQUEST FOR DISCLOSURE TO PLAINTIFF*                    2

In the presence of other employees he would ask plaintiff embarrassing sexual questions. On occasions Doe would restrict plaintiff's free movement at the workplace by touching and rubing plaintiff's body without plaintiff's consent. Doe also made a degrading comment to plaintiff while plaintiff was pregnant regarding private and intimate matters.

11. In addition to matters of sexual harassment stated above, plaintiff has reason to believe and does believe that in addition to manager Doe, one or more of the defendant company's managers demanded sexual favors of female employees in order for said females to secure favorable terms and conditions of employment, and continued employment. A supervisor told plaintiff that he had once entered manager Doe's office without knocking, during business hours, and discovered Doe having sex with a female employee. On another occasion manager Doe attempted to kiss a female employee, in front of other employees, at a party.

12. The female employees and former employees referred to herein are similarly situated to plaintiff. Plaintiff alleges such individuals have heretofore been deterred in filing appropriate complaints of sexual harassment because of the defendant company's policies and practices complained of herein. Such policies and practices have had a chilling effect on such individuals' pursuing their rights under law. Plaintiff reserves the right hereafter to amend in order to assert her claims as a class action on behalf of herself and other similarly situated employees and former employees.

13. In the fall of 1999 plaintiff finally complained to upper management regarding manager Doe's conduct. Plaintiff was visibly pregnant at the time. By such complaint plaintiff opposed a practice made unlawful under Chapter 21.00, *et seq.* of the Texas Labor Code. In response to plaintiff's complaint, in November 1999 the company's director of human resources, Jan Hartz, conducted classes for employees regarding sexual harassment. About three months after plaintiff

made the complaint, and after five years of employment, defendants fired plaintiff.

14. On January 18, 2001 plaintiff delivered a baby by cesarean section. Plaintiff took two (2) weeks' leave and on Monday, January 31, 2001 plaintiff notified the company she planned to return to work. Supervisor Nancy Talley told plaintiff the company required a letter from plaintiff's physician before plaintiff could return to work. Plaintiff provided the company with the physician's letter, which stated plaintiff could return to "light duty."

15. The next day plaintiff's physician told plaintiff that Jan Hartz, the company's Human Resources Director, had called the doctor's office to inquire regarding what kind of light duty plaintiff could do. Jan Hartz told that doctor's office that plaintiff's job duties "involved moving heavy objects such as lawn mowers."

16. On Wednesday, February 3, 2001 plaintiff reported to work, whereupon Supervisor Talley and Director Hartz terminated plaintiff. Talley and Hartz told plaintiff she was being fired because she violated company policy regarding purchasing merchandise.

17. Plaintiff alleges one or more of the protected bases stated above were motivating factors in the company's decision to take adverse personnel action against her.

* * *

19. Plaintiff alleges that the company at times relevant did not have an adequate policy or procedure whereby employees could report unlawful harassment, including sexual harassment. Even if it did have such policy or procedure, the company failed to provide information regarding same to its employees.

20. Plaintiff alleges the company failed to adequately train defendant Fulano Doe, and its other managers regarding the nature and prevention of unlawful harassment. The company failed to

establish an appropriate internal complaint procedure, failed to inform employees regarding filing of such complaints, or both. After the company knew or should have known that manager Doe was subjecting plaintiff and others similarly situated to sexual harassment, the company was negligent in retaining Doe.

21. As the result of such practices and customs stated above, the company by and through its managers, including defendant Doe, and perhaps other(s), created and maintained a sexually charged hostile work environment. The company subjected plaintiff and others similarly situated to a pattern and practice of sexual harassment, including both the hostile work environment and *quid pro quo* demands.

**C.    Claims, Causes of Action, and Remedies**
**1.    Statutory Claims:**
**Texas Labor Code Chapter 21.00, *et seq*.**

22. Defendants have violated the statutory rights of plaintiff and others similarly situated by subjecting them to sexual harassment.

**2.    Common Law Causes of Action**

23. Regarding defendants' conduct upon which plaintiff's claims of sexual harassment are based, defendants have subjected plaintiff and individuals similarly situated to assault, assault and battery, false imprisonment on the company's premises, invasion of privacy, and defendants intentionally inflicted emotional distress upon same. The company negligently failed to train and supervise its supervisors and mangers in matters concerning unlawful harassment. Defendants have subjected plaintiff to defamation, defamation *per se*, and self-compelled defamation, in ways including falsely accusing plaintiff of violating company policy regarding the sale of merchandise.

**3.    Declaratory Relief**

24. Plaintiff requests the court construe and declare the rights of the parties based on the company's employee manual and

its putative    alternative dispute resolution policy (Exhibit D).

* * *

## VI    DAMAGES

27. The company has engaged in unlawful intentional employment practices as alleged in the administrative complaint and herein. The company has engaged in a discriminatory practice with malice or with reckless indifference to plaintiff's statutory rights. Defendants' conduct was outrageous, and beyond the norms of civilized society. Defendants acted with intent and malice to cause plaintiff harm, and did do so. Accordingly, plaintiff is entitled to both compensatory and punitive damages.

* * *

## IX    PRAYER FOR RELIEF

33. WHEREFORE, plaintiff prays the court award such relief as includes that stated below.
34. DECLARE the rights of the parties with respect to the company's alleged alternative dispute resolution policy as stated in its employee manual.
35. ORDER the defendant company to reinstate plaintiff as a regular employees, with all backpay and benefits.
36. ORDER defendant to pay plaintiff damages, including actual, compensatory, and punitive.
37. ORDER that defendants to pay plaintiff prejudgement and postjudgement interest as may be allowed by law.
38. ORDER defendants not to retaliate further against plaintiff.
39. ORDER the defendant company to pay plaintiff reasonable attorney's fees, costs of court, and expenses as provided by law.
40. ORDER such other and further relief as may be proper and just.

  B.    Amendment to Clarify Claims, Make Corrections and add cause of action

6.    Plaintiff will amend to clarify bases of claims under the Texas Labor Code, make corrections (e.g., dates in ¶¶ 14 and 16). Plaintiff may also add breach of the employment contract based on defendant's failure to pay plaintiff, and others similarly situated, overtime during the four (4) year period preceding the filing of this case.    Plaintiff will not in this case allege violations of the Fair Labor Standards Act.    Plaintiff may also add breach of the employment contract based on 1) defendant's failure to give plaintiff, and others similarly situated, notice of rights to continuation coverage upon becoming eligible for enrollment in the group health Plan, during the four (4) year period preceding the filing of this case; and 2) defendant's failure to give plaintiff, and others similarly situated, the notice of creditable coverage upon termination of employment, during the four (4) year period preceding the filing of this case.    Plaintiff will not in this case allege violations of the Employee Retirement Income Security Act or the Health Insurance Protection and Accountability Act.

6.    **Rule 194.2(d), "the amount and method of calculating economic damages"**: Regarding backpay, to date plaintiff has lost approximately $25,594.44 in backpay.    The calculation uses the average of plaintiff's 1999 and 1998 gross salary, $24,222.00, and deducts from that amount earnings in 2000 ($15,884.00), 2001 ($11,304.52, and 2002 YTD ($1200.00- approximately).    This results

in a difference of $8338.00 in 2000, and $12,917.48 in 2001. Plaintiff seeks the full amount of compensatory and punitive damages under the Texas Labor Code. Absent reinstatement, front pay at present appears to be about $13,000.00 per year, and plaintiff would seek at least five years front pay, a total of $65,000.00. Regarding the common law causes of action, plaintiff seeks the fair and reasonable amount to be determined by the jury.

7.    Regarding additional damages in possible related claims, at present it appears defendant did not provide notice of COBRA rights upon initial eligibility, and failed to provide the HIPAA certificate upon termination. At present plaintiff assumes these omissions affected plaintiff and all other employees. As to plaintiff the civil penalties to date are approximately, a) COBRA- $200,750.00, and b) HIPPA- $78,430.00, a grand total of (approximately) $279,180.00. In context of any class action, plaintiff assumes class members would have actual damages compensable under state law after the termination of the federal preemptive periods.

8.    Rule 194.2(d), "the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case": At this time such persons known to plaintiffs include those stated below.

8.1     Raul Ramos, defendant's manager, Corpus Christi, has personal knowledge of his conduct and comments toward plaintiff. Plaintiff believes he has knowledge of his role in plaintiff's termination (See 8.5, below.).Plaintiff believes he also has personal knowledge of sexual activity at the workplace with an employee named "Missy," in Corpus Christi. Plaintiff does not have his current address and telephone number, but plaintiff believes such is known to defendant.

8.2     Steven Trevino, defendant's manager, Corpus Christi. Based on statements made to plaintiff, plaintiff believes he observed sexual activity at the workplace between Raul Ramos and an employee named "Missy," in Corpus Christi. Plaintiff does not have his current address and telephone number, but plaintiff believes such is known to defendant.

8.3     Raul Esparza, a management employee. He told plaintiff that Raul Ramos and he took money from the cash drawer of a store manager in Brownsville named "Esmeralda," in order to contrive a basis for terminating her.

8.4     Nancy Talley, Jan Hartz, and Cynthia White, management employees at corporate headquarters. Plaintiff believes they have knowledge of the facts surrounding plaintiff termination. Nancy Talley has knowledge of the September 1999 memo re sale of merchandise to employees. Plaintiff does not have their current addresses and telephone numbers, but plaintiff believes such is

known to defendant.

8.5     Federico Galvan, Jorge Perez, Melissa Perez, Rey Lucio, Clara Cortez, Eddie Colunga, Steve Walker, Andy Martinez, Chad Grigg, Jaime Loera, Lupe Rivera, Humberto Solis, Israel Medrano, Ramon Garcia, Victor de Leon, Ricky Garza, Jorge Espino, and Mike Trevino are current or former management employees, who have knowledge of the practice of purchase of  merchandise by employees after the September 1999 memo from Nancy Talley.  They have knowledge that plaintiff followed the approved practice for such sales.  Plaintiff does not have his current address and telephone number, but plaintiff believes such is known to defendant.

8.6     Joe Ramirez, Management employee.  Plaintiff believes he has knowledge of at least one other example of sexual harassment involving another female employee.  Plaintiff does not have his current address and telephone number, but plaintiff believes such is known to defendant.

8.9     Brenda Villareal, current or former employee in Corpus Christi.  She told plaintiff facts regarding a company party sponsored by Raul Ramos, where among other things, Ramos became drunk and kissed her without her consent in the presence of Villareal's male friend.  Plaintiff does not have his current address and telephone number, but plaintiff believes such is known to defendant.

8.10    Elizabeth Armas, Adriana Perez, and Carmen Barrera, employees or former employees in Brownsville. Plaintiff made contemporaneous reports to them regarding Raul Ramos's action and conduct toward plaintiff which plaintiff contends constitutes sexual harassment.

8.11    Ms Teri Danish, address and telephone numbers below. As counsel for defendant, she is presumably familiar with matters at issue in this case.

8.12    Deyanira Crespo, plaintiff, 417 East 10th Street Los Fresnos, TX 78566, 956.233.9316, has knowledge of matters at issue in this case.

8.13    David Horton and Dennis Sanchez, plaintiff's counsel, address and telephone numbers below, have knowledge of matters at issue in this case.

9.    Rule 194.2(f), "for any testifying expert ....": Plaintiffs have not consulted or retained a testifying expert at this time.

10.    Rule 194.2(g), "any indemnity and insuring agreements described in Rule 192.3(f).": Plaintiffs are not at this time aware of any such applicable indemnity and insuring agreements.

11.    Rule 194.2(h), "any settlement agreements described in Rule 192.3(g)": Plaintiffs are not at this time aware of any such settlement agreements.

12.  **Rule 194.2(I), "any witness statements described in Rule 192.3(h)":** Plaintiffs are not at this time aware of any such witness statements.

12.  **Rule 194.2(j), "... medical records and bills ....":** No such documents exist at this time. To the extent same relating to plaintiff's son are responsive, such have been produced (documents ##059-061).    At such time as they may exist plaintiffs will provide defendant with appropriate information release authorizations.

13.  **Rule 194.2(k), "... medical records and bills ... [from] requesting party":** No such documents exist at this time.  At such time as they may exist plaintiffs will provide defendant with copies of same.

Respectfully Submitted,

*David Horton*

Dennis Sanchez
SBOT No. 17569600
SANCHEZ, WHITTINGTON,
  JANIS & ZABARTE, L.L.P.
100 North Expressway
Brownsville, TX 78521-2284
956.546.3731 Telephone
956.546.3765 Telecopier

David Horton
SBOT No. 10014500
NEEL & HORTON, L.L.P.
Post Office Box 2159
South Padre Island, Texas 78597
956.761.6644 Telephone
956.761.7424 Telecopier

Attorneys for Plaintiff
DEYANIRA CRESPO
------------------------------------------------------------

## CERTIFICATE OF SERVICE

     I served a copy of this document on defendant's counsel of
record, to-wit:

Ms. Marjory Batsell
SBOT No. 04631400
Ms. Teri Danish
SBOT No. 05375320
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, TX 78522
956.542.7441 telephone
956.541.2170 telecopier
Attorneys for Defendant,

by Certified Mail # 7099 3400 0017 5908 7199 on February 18, 2002.

*David Horton*

David Horton

PLAINTIFFS' RESPONSE TO
*DEFENDANT'S REQUEST FOR DISCLOSURE TO PLAINTIFFS*                    13